**STATE of North Dakota,
Plaintiff/Appellee,**

**v.**

**Steven McLAIN, Defendant/Appellant.**

**Cr. No. 730.**

Supreme Court of North Dakota.

Jan. 23, 1981.**

---

* McGUIRE, District Judge, sitting in place of VANDE WALLE, J., disqualified.

** Application for Writ of Certiorari has been filed in United States Supreme Court.

Robert W. Palda, Minot, and Mills & Moore, Bismarck, for defendant/appellant; argued by William R. Mills, Bismarck.

Tom P. Slorby, State's Atty., Minot, for plaintiff/appellee.

PAULSON, Justice.

Steven Loren McLain appeals from a judgment of conviction entered against him by the District Court of Ward County on June 18, 1980. A 12-member jury convicted McLain of the crime of gross sexual imposition under § 12.1–20–03(1)(a) of the North Dakota Century Code. We affirm the judgment of conviction entered by the district court.

On November 13, 1979, the complainant herein, her sister, and two friends, members of a women's bowling team, went bowling at the Chateau Lanes in Minot. After the complainant had finished bowling, she and her teammates played card games and drank several alcoholic beverages at the Alley Cat, a lounge located in the Chateau Lanes. The parties remained in the lounge until 11:15 p. m. when the complainant and one of her friends left the Alley Cat in order to start and warm up their cars. McLain had arrived at the Alley Cat to meet some of his friends after he had finished work. He also left the building in order to start his car and to warm it up. The complainant's car was parked directly outside the door of the building and as she entered her car McLain approached her and asked her for a ride to his home and asked her if she would like to have breakfast with him. The complainant refused his requests and went back into the building. McLain also reentered the building and purchased an alcoholic beverage for the complainant and himself; both parties engaged in conversation and consumed their drinks while seated at the horseshoe-shaped table located in the Alley Cat. The complainant purchased some beer and, after she left the Alley Cat again, she attempted to leave the parking lot in order to meet her husband who was driving home from work late that evening. Before the complainant could close the door on her car, McLain again asked her whether she would go out to breakfast with him or would give him a ride home. When the complainant refused his requests, McLain forcibly entered her car and grabbed her by the throat. He proceeded to drive to his car which was located about 120 feet from the building. McLain forced the complainant to enter his car and he then drove west of Minot on U.S. Highway 2. McLain told the complainant to undress. She observed a sign reading "Welcome to Berthold" and at that point

McLain drove onto a gravel road for about four miles before stopping. McLain then forced the complainant to submit to sexual intercourse and fellatio, after which he drove his car down the road for a brief distance and stopped.

The complainant then requested that McLain release her. He refused to release her and stated, "Well, it's not going to do you any good to go report this anyway . . . I have done this before and gotten away with it". McLain indicated to the complainant that he had raped another woman. When he left his car for a brief time, the complainant attempted to lock the car doors and to start the car in order to escape. However, McLain was able to reenter his car and he started to strangle the complainant and, in the process, tore her bowling shirt. McLain put on a pair of work gloves and said, "Now you are six feet under. I've got a grave all picked out for you already". He proceeded to drive down the road and stopped a third time. At this point McLain again forced the complainant to submit to sexual intercourse and fellatio. McLain drove back to Minot at 5 a. m. on November 14. At that time two patrol cars of the Minot Police Department were parked at the entrance of the Chateau Lanes parking lot and McLain drove south on U.S. Highway 83 for a brief period before leaving the complainant at her car at 5:30 a. m. The complainant's sister drove up to McLain's car just as McLain was leaving the parking lot. She and the complainant's husband had been searching for the complainant since 3 a. m. on November 14. They had found complainant's car unlocked and a package of beer and her purse were in the car. Her husband then notified the police that his wife was missing. The complainant was taken home and, at 6 a. m., she gave a written account of the events to the Minot Police Department. She was then taken to Trinity Hospital in Minot at 7 a. m. on November 14. At 1:30 p. m. on November 14, complainant was asked to identify her assailant from a group of pictures depicting male subjects, and she identified McLain's picture. Pictures of the bruises and marks on complainant's neck were taken at 4 p. m. on November 14.

On November 15, 1979, Detective Sergeant Don Schneider of the Minot Police Department filed a complaint with the District Court of Ward County which charged McLain with committing the offense of gross sexual imposition. A warrant for McLain's arrest was issued and McLain was arrested on November 16, 1979. On November 16 and on November 28, 1979, the Minot Daily News printed articles which referred to a prior charge of gross sexual imposition lodged against McLain which had been dropped and the testimony of complainant at the preliminary hearing where she stated that McLain told her, "I have done this before and gotten away with it". McLain consented to the search of his car and items of clothing which contained blood stains were found in his car. The preliminary hearing was held on November 27, 1979, and the arraignment was held on December 6, 1979. During voir dire, a prospective juror was questioned and McLain asserted a challenge for cause. McLain's challenge for cause was denied. At various points in the proceedings McLain had difficulty hearing and understanding the questions posed to him by the state's attorney, the defense attorney, and the court. After the defense finished presenting evidence, the State sought to present rebuttal testimony and called as a witness the woman who allegedly was the victim of McLain on a charge similar to gross sexual imposition. McLain was not convicted on this prior charge and the charge was dropped due to insufficient evidence. The witness did not testify because the court determined that the law of evidence did not permit the State to impeach McLain by the testimony of a rebuttal witness who filed a complaint against McLain on a prior occasion. During their deliberations, the jury sent a note to the court which requested that a copy of McLain's testimony be presented to them. The court denied the request and sent to the jury a note which stated:

"Your request for the Defendant's testimony must be denied. All the Jury may have with them in the jury room are the

instructions and exhibits. You must rely on your recollection and memory. It is one of the duties of a Jury."

McLain's testimony directly contradicted the testimony given by the complainant on several factual issues. McLain testified that he left the Alley Cat to start his car and met the complainant when he was reentering the building. McLain asked the complainant if she would have breakfast with him. Both McLain and the complainant entered the Alley Cat together and he bought her a drink. McLain testified that the complainant and other witnesses did not testify truthfully on several factual issues. First, McLain contends that the acts of sexual intercourse and fellatio were voluntarily engaged in by the complainant. McLain contends that only one act of intercourse occurred. He denied saying, "I have done this before and gotten away with it". McLain also denied the complainant's assertion that he attempted to strangle her when she attempted to lock the doors on his car and to start the car. McLain could not explain how the complainant received the bruises on her neck. Similarly, several witnesses for the State testified that McLain and the complainant did not reenter the Alley Cat together. McLain presents the following issues for our consideration:

1. Whether or not the district court's refusal to accept McLain's challenge for cause of a juror constituted prejudicial error.

2. Whether or not McLain was prevented from having a fair trial.

## I

■ The first issue concerns whether or not the district court's refusal to accept McLain's challenge for cause of a juror constituted prejudicial error. The Sixth Amendment to the United States Constitution as applicable to the States through the Fourteenth Amendment guarantees to an accused the right to a trial by an impartial jury. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). The Sixth Amendment prescribes no specific test for determining the impartiality of the jurors. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Rule 24(b)(2) of the North Dakota Rules of Criminal Procedure, provides as follows:

### "RULE 24—TRIAL JURORS

*"(a) Examination of jurors.* The court shall permit the defendant or his attorney and the prosecuting attorney to participate in the examination of prospective jurors.

*"(b) Challenges.*

"(1) . . .

*"(2) Challenges for cause.* If the judge, after examination of any juror by himself or either side, is of the opinion that grounds for challenge for cause are present, the judge should excuse that juror from the trial of the case. If the judge does not excuse that juror, any party may challenge the juror for cause. A challenge to an individual juror should be made before he is sworn to try the case, but the judge may permit it to be made after he is sworn but before jeopardy has attached.

■ The term "challenge for cause" embodies two concepts: technically, a juror failing to meet the statutory qualifications for jurors is subject to challenge for cause, while the second concept would encompass an actual or implied bias. McLain makes no distinction in this regard and § 29–17–35, N.D.C.C., contains both of these concepts within the scope of its provisions. The basis for McLain's challenge for cause was the testimony given by a juror on voir dire:

"MR. PALDA: . . . you said you would do so "to the best of your ability." Do you feel that your ability to be fair and impartial may be impaired because of your religious beliefs?

"[WITNESS]: Yes.

"MR. PALDA: In other words, you are saying you may not be able to do so? You don't feel you can be fair and impartial in a case like this?

"[WITNESS]: No.

"MR. PALDA: Your Honor, we move that the witness, the prospective juror, be dismissed for cause.

. . . . .

"MR. PALDA: First you told me you didn't feel you could be fair and impartial, when I asked you, and then you said you could be when Mr. Slorby asked you the first time. The reason for not being able to be fair and impartial was one of religion, and you were aware of someone sexually assaulted in some manner. I am trying to find out all those things, coming into your mind, what makes you reticent, if you can be fair to the Defendant being charged with a sexual crime such as the one we have here. I'm trying to find out whether you feel in your own mind you can be fair and impartial under these circumstances.

"[WITNESS]: Yes, I can.

. . . . .

"MR. PALDA: Your Honor, I challenge this witness for cause on the grounds: Number one, she states she cannot be fair and impartial as a juror, and on the second grounds as to competency for being a juror in this type of case.

. . . . .

"THE COURT: Apart, then, from having certain of those qualifications, you must be able to serve fairly and impartially and not come armed with any beliefs that would keep you from serving as a fair and impartial juror. In other words, do you have any preconceived notions as to how this trial against Steven McLain should be resolved?

"[WITNESS]: No.

"THE COURT: Do you know anything about this particular case?

"[WITNESS]: No.

"THE COURT: Have you read about it or heard about it on the news media?

"[WITNESS]: No.

"THE COURT: You have certain religious beliefs, strong religious beliefs, do you ...?

"[WITNESS]: Yes.

"THE COURT: Is there a strong moral code you live by where things are right and things are wrong?

"[WITNESS]: Yes.

"THE COURT: And you try to maintain your moral code to endeavor to do those things that are right?

"[WITNESS]: Yes.

"THE COURT: This moral code you have imposed upon yourself, do you impose it upon all people or are you satisfied to impose it upon yourself?

"[WITNESS]: I impose it on myself, and I talk to other people, and if they don't choose it, that's their right.

"THE COURT: Now, the strong moral code you have imposed upon yourself, are you going to bring if into the jury room and distrust or excuse the evidence you bring in with you or you hear from the witness stand or through the instructions of the Court when it comes to deliberate the guilt or innocence of Mr. McLain?

"[WITNESS]: No.

"THE COURT: That strong moral code will not be the determinative factor if you are selected as a juror?

"[WITNESS]: No.

"THE COURT: You will listen to the evidence and rely on the instructions of the court?

"[WITNESS]: Yes.

"THE COURT: And you can do that?

"[WITNESS]: Yes.

"THE COURT: And, as in the dialogue with Mr. Palda in the last questioning, you will listen and you will give such credibility to the witnesses that you feel that they deserve when you listen to them when they give their testimony?

"[WITNESS]: Yes.

"THE COURT: You indicated that if the testimony shows the innocence of Mr. McLain is more credible than a verdict of guilty, you would believe that credibility and acquit him?

"[WITNESS]: Yes.

"THE COURT: On the other hand, if you believe the testimony on behalf of the State shows they have sustained their

burden of proof beyond a reasonable doubt, the guilt of Mr. McLain, you would give that testimony the credibility you believe it is entitled to and bring in a verdict of guilty?

"[WITNESS]: Yes.

"THE COURT: Are you a little apprehensive now . . . after being examined by counsel and the Judge as to what your role should be as a juror?

"[WITNESS]: I guess so.

"THE COURT: Can you serve? Do you feel you can serve as a fair and impartial juror in this matter of State versus McLain notwithstanding the nature of the case?

"[WITNESS]: Yes."

 McLain contends that the juror was not competent to be a juror under § 27–09.1–08(2) and § 29–17–34, N.D.C.C. We disagree with McLain's contention because the requirements of § 27–09.1–08(2) and § 29–17–34, N.D.C.C., for disqualification of jurors were not met.[1] All challenges to individual jurors must be determined by the court and its determination will not be disturbed unless the court has clearly abused its discretion. *State v. Ternes*, 259 N.W.2d 296 (1977), *cert. den.*, 435 U.S. 944, 98 S.Ct. 1524, 55 L.Ed.2d 540 (N.D.1978); *Texas & P. R. Co. v. Hill*, 237 U.S. 208, 35 S.Ct. 575, 59 L.Ed. 918 (1915). It is settled law in this State that no error can be predicated in the overruling of a challenge for cause where the appellant—McLain—has not exhausted all of his peremptory challenges. *State v Ternes*, 259 N.W.2d 296, *supra; State v. Uhler*, 32 N.D. 483, 156 N.W. 220 (1916). McLain has not demonstrated whether his peremptory challenges had been exhausted. The offense of gross sexual imposition is a felony and under Rule 24(b)(1), N.D.R.Crim.P., McLain had ten peremptory challenges available for use in determining the members of the jury. The records in this case do not reflect whether all of the peremptory challenges were used; however, we believe that a determination of this preliminary issue is unnecessary because the district court did not abuse its discretion in overruling McLain's challenge for cause. The testimony of the challenged juror reveals that she was an impartial juror.

 Section 29–17–35, N.D.C.C., provides that a challenge for cause in a criminal case may be based upon actual or implied bias. Implied bias may be based upon any of the enumerated causes found in § 29–17–36, N.D.C.C. None of the enumerated causes are applicable here. Similarly, the testimony of the challenged juror indicates that she could be an impartial juror. We must ascribe great weight to a juror's statement at voir dire that she will give a defendant a fair and impartial trial. See *State v. Olson*, 274 N.W.2d 190 (N.D.1978). The defendant must demonstrate the actual existence of such an opinion in the mind of the juror to overcome a presumption of impartiality to raise a presumption of partiality. The challenged juror's early state-

---

1. Section 27–09.1–08(2), N.D.C.C., provides:
 "1. . . .
 "2. A prospective juror is disqualified to serve on a jury if he:
 a. Is not a citizen of the United States and a resident of the state and county;
 b. Is not at least eighteen years old;
 c. Is unable to read, speak, and understand the English language;
 d. Is incapable, by reason of his physical or mental disability, of rendering satisfactory jury service; but a person claiming this disqualification may be required to submit a physician's certificate as to the disability, and the certifying physician is subject to inquiry by the court at its discretion; or
 e. Has lost the right to vote because of imprisonment in the penitentiary (section

 12.1–33–01) or conviction of a criminal offense which by special provision of law disqualified him for such service."
 Section 29–17–34, N.D.C.C., provides:
 "*29–17–34. General causes of challenge specified.*
 "1. A conviction for felony;
 "2. A want of any of the qualifications prescribed by law to render a person a competent juror, including a want of knowledge of the English language as used in the courts; and
 "3. Unsoundness of mind or such defect in the faculties of the mind or organs of the body as renders him incapable of performing the duties of a juror."

ments appear to be the result of confusion which arose due to the nature of the questions posed by McLain's attorney. Further questioning by the court revealed that such juror could be an impartial juror. Thus, we conclude that the district court did not abuse its discretion when it overruled McLain's challenge for cause of the challenged juror because she expressed no opinion on McLain's guilt or innocence sufficient to raise a presumption of partiality. *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1878).

## II

 McLain contends that he was denied a fair trial because newspaper articles referred to a similar charge against McLain which had been dropped and because the prior complaining witness was put on the stand. In addition, McLain contends that his inability to hear the questions posed to him and the denial of the jury's request for a transcript of McLain's testimony resulted in a denial of his right to a fair trial. The right to a jury trial accorded to an accused guarantees to the accused the right to a fair trial by impartial jurors. The newspaper articles were printed on November 16 and on November 28, 1979. These articles appeared in the Minot Daily News approximately six months prior to the trial. McLain has not demonstrated how these articles prejudiced the jury nor did he exercise his right to a change of venue. The defendant must demonstrate the actual existence of such an opinion in the mind of the jury as will raise a presumption of partiality. *State v. Olson*, 274 N.W.2d 190 (N.D.1978). Although a defendant is entitled to a panel of impartial jurors, qualified jurors need not be totally ignorant of the facts and issues involved in a case. A distinction must be made between mere familiarity with the defendant or his past and an actual predisposition against him, just as a distinction is made between largely factual publicity and publicity which is invidious and inflammatory. Thus, in *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), the United States Supreme Court held that the exposure of sev-

eral jurors to news accounts of prior felony convictions of the accused and certain facts about the crime charged were insufficient to warrant a reversal of a conviction. We will not presume unfairness of a constitutional magnitude unless a trial atmosphere existed which was utterly corrupted by media coverage. That is not the case here. *Murphy v. Florida, supra; Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

 Pretrial publicity may prevent a fair trial to the accused. In *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), the United States Supreme Court found that a barrage of newspaper headlines, articles, cartoons, and pictures unleashed against the accused six months prior to the accused's trial denied the accused's right to a fair trial. In *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), the Court reversed a conviction where a filmed confession of the accused was broadcast on television on three occasions. Similarly, in *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); and *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), the Court reversed convictions because of excessive and adverse pretrial publicity. These cases involve inflammatory publicity and other highly prejudicial activities by the news media. The publicity in McLain's case was largely factual publicity and was not of such a nature or degree as to warrant a reversal of the conviction. See also *State v. Olson*, 274 N.W.2d 190 (N.D.1978); *Houle v. North Dakota District Court*, 293 N.W.2d 872 (N.D.1980).

 At the trial, the complainant testified that McLain stated, "I have done this before and gotten away with it". McLain later denied making the statement. The State sought to impeach McLain by presenting in rebuttal the testimony of the complainant in a prior case in which charges against McLain were dropped due to insufficient evidence. McLain's counsel objected to the State's attempt to call the witness and no testimony was elicited from

such witness. Despite the fact that such witness did not testify, McLain contends that the State's attempt to call the prior complainant denied his right to a fair trial. We do not accept McLain's contentions because the witness was merely called to the stand and did not testify. McLain relies upon cases in which the prosecution knowingly offered inadmissible evidence or called witnesses who claimed valid privileges for not testifying. These cases are not applicable here because inadmissible evidence was not presented and the witness was prevented from testifying on the prior charge.[2] No evidence existed which indicated that the jury was aware of the witness's identity or purpose. Even if we accept McLain's contentions that the members of the jury were aware of the prior witness's identity and purpose, the existing testimony of the complainant in the instant case and that of McLain on the issue of any prior criminal act by McLain was directly contradictory. On this state of facts, any attempt on our part to attribute undue prejudice to McLain would be nothing but pure speculation. In the absence of evidence to the contrary, the presumption exists that the jury performed its duties in accordance with the law and were not influenced by other events or evidence. *State v. Sheldon,* 301 N.W.2d 604 (N.D.1980); *State v. Graber,* 77 N.D. 645, 44 N.W.2d 798 (1950).

McLain also contends that he was denied a fair trial because of his inability to hear the questions posed to him and because the district court denied the jury's request for a transcript of McLain's testimony. McLain's inability to hear the questions could be the result of a variety of factors. Undoubtedly, the acoustics in the courtroom were a factor in McLain's difficulty in hearing. However, the language used by the attorneys, as well as McLain's inattentiveness or evasiveness, may also have contributed to the repetitive nature of the proceedings. These difficulties certainly were not of such a nature or degree as to deny McLain a fair trial. It is important to note that the district court advised the jurors that the court would make all arrangements necessary in order to facilitate the jurors' ability to hear testimony. The jury's request for a transcript of McLain's testimony was denied by the district court. McLain's attorney concurred in the district court's decision not to issue a transcript of the testimony to the jury. An issue or contention not raised or considered in the trial court cannot be raised for the first time on appeal. See *Moran v. Moran,* 200 N.W.2d 263 (N.D.1972). In addition, § 29-22-04, N.D.C.C., specifies what papers the jury may consider in its deliberations. The jury may take with them the notes of the testimony which members of the jury have taken during the course of the proceedings. Additionally, a completed transcript is not properly submitted to the jury because § 29-22-04, N.D.C.C., prohibits the use of a completed transcript by the jurors. This policy is a sound one. We conclude that under the totality of the circumstances enumerated above, McLain was not denied a fair trial; therefore, the judgment of conviction is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

2. The district court excluded the witness's testimony on the basis of our decision in *State v. Johnson,* 231 N.W.2d 180 (N.D.1975), which was decided before the North Dakota Rules of Evidence became applicable. Historically, limitations on impeachment by contradiction were imposed by the "collateral" rule—extrinsic evidence is not admissible to show a specific contradiction on a matter classified as collateral. Under the North Dakota Rules of Evidence, Rule 403, as applied to impeachment by contradiction, requires courts to exclude the preferred impeachment evidence if its probative value was substantially outweighed by factors such as confusion, prejudice, and waste of time. See Weinstein's Evidence ¶ 607[05].