STATE of North Dakota, Plaintiff
and Appellee,

v.

Steven McLAIN, Defendant
and Appellant.

Crim. No. 730–A.

Supreme Court of North Dakota.

Nov. 12, 1981.

**344**

Tom Slorby, State's Atty., Minot, for plaintiff and appellee.

Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for defendant and appellant; argued by Irvin B. Nodland, Bismarck.

PEDERSON, Justice.

Steven McLain was convicted of the crime of gross sexual imposition. We af-

firmed the conviction in *State v. McLain*, 301 N.W.2d 616 (N.D.1981). Subsequently, McLain retained a different lawyer to investigate additional avenues of relief. Pursuant to Rule 33(b) of the North Dakota Rules of Criminal Procedure, a motion for a new trial on the ground of newly discovered evidence was filed. The court, after an evidentiary hearing, ruled, in part, that the proffered evidence did not satisfy the requirements for a new trial.[1] This appeal is from the order denying McLain's motion for a new trial.

On motions for a new trial, newly discovered evidence must be considered in light of the entire record made at the trial and at the hearing on the motion.

The scenario began late in the evening of November 13, 1979 in the Alley Cat Lounge in Minot. The complainant had just finished bowling and was relaxing with her friends before meeting her husband who was returning from a trip; McLain had stopped at the Alley Cat "to meet the guys . . . and have a beer." The complainant testified that she left the lounge at about 11:15 in order to warm up her car. While she was seated in her car, McLain ap-

---

1. In denying McLain's motion for a new trial, the judge also ruled that the motion was untimely under Rule 33(b) of the North Dakota Rules of Criminal Procedure. In pertinent part, the Rule provides that "[a] motion for a new trial based on the ground of newly discovered evidence must be made *within 30 days after discovery of the facts upon which it is made* and within 2 years after final judgment." [Emphasis added.] Rule 45(a), N.D.R.Crim.P., governs the computation of the time period.

The chronology relevant to this issue is as follows: McLain's trial commenced on May 19, 1980; sentence was pronounced on June 18, 1980. The newly discovered evidence, the testimony of Albert Mosser, first came to the attention of McLain's sister, Karen Moller, on June 2, 1980. On that evening, in a Minot bar, Albert Mosser heard McLain's sister and others discussing the trial. He injected himself into the conversation, informing Miss Moller that he had observed McLain and the complainant several times on the evening of the crime. "Within a few weeks after" her conversation with Mosser, McLain's sister conveyed the information to her mother. At the hearing on the

motion for a new trial, McLain's mother testified that she, in turn, informed McLain's trial counsel of this new discovery sometime during the summer of 1980. McLain's mother also stated that trial counsel told her the matter would be investigated. She heard no more about it, however. In an affidavit, McLain's present counsel, retained after the trial, stated that he was advised by McLain's mother of a "possible witness" on or about February 25, 1981. Presumably counsel is referring to Mosser. In McLain's brief, however, his present counsel states that Mosser came to his attention on March 17, 1981. Members of the McLain family contacted Mosser on or about March 2, 1981. Mosser's affidavit was prepared and signed on March 17, 1981. The motion for the new trial was made on April 1, 1981.

In ruling that the motion was untimely under Rule 33(b), N.D.R.Crim.P., the trial court considered the date on which McLain's sister spoke with the affiant (June 2, 1980) to be the date of discovery. We decline to rule on this issue in light of our decision that McLain's motion is unsuccessful on the merits.

proached the complainant and asked her if she would give him a ride home and "go out for breakfast." The complainant refused and went back into the lounge. McLain also reentered the building. According to McLain's account, the complainant's response to his request was "not right now." McLain testified that he and the complainant returned to the lounge together. Several of the State's witnesses testified that the complainant returned to the lounge alone.

During a ten-minute period while the complainant's car was "warming up," McLain and the complainant engaged in a brief conversation and consumed drinks which McLain had purchased. The complainant testified that she then "bought a six-pack of beer to take home" and departed. According to the complainant, before she could close her car door, McLain appeared and repeated his earlier requests. When she refused, McLain forcibly entered her car and grabbed her by the throat. He drove to his car, which was also in the parking lot, forced the complainant into the car, and drove west of Minot on U. S. Highway 2. The complainant testified that McLain stopped at Behm's truck stop to buy gas. She stated that McLain "had his arms around [her] neck and hands [tightly] around [her] throat" during the stop at the gas station.

The remainder of the complainant's testimony concerned the details of her ordeal. She testified that McLain forced her twice to submit to sexual intercourse and fellatio. The complainant told of her thwarted efforts to escape and of McLain's violent reaction, including a threat to her life. See State v. McLain, supra, at 619 (Complainant's additional testimony).

At his trial McLain contended that the complainant freely accompanied him to the country and voluntarily participated in the sexual acts. He denied threatening the complainant in any manner. Although he

admitted that the complainant had tried to flee, and that he "pushed her back," McLain denied that he "started to strangle" her in his anger after her attempted escape. He contended that only one act of intercourse occurred. State v. McLain, supra, at 620 (McLain's additional testimony).

The newly discovered evidence offered by McLain is the affidavit of a Minot man, Albert Mosser, who claims to have observed McLain and the complainant both in the lounge and McLain and a woman at the truck stop on the night in question.[2] Mosser's affidavit, in pertinent part, states that on November 13, 1979, sometime after 6:30 p.m., he saw Steve McLain sitting at a table in the Alley Cat with the complainant and several other women and that "the group appeared to be having a good time." He states that "they were talking to each other and Steve McLain was a part of the conversation." In addition, later in the evening, Mosser "noticed ... McLain near the door with [the complainant]." He noted that "the two of them headed for the bar."

Regarding his observations at Behm's Truck Stop later that same evening, Mosser stated that he saw "Steve McLain and a woman sitting at the truck stop in a car," that the two of them appeared to be talking to each other, and that "everything looked normal." In his affidavit, Mosser further states: "At no time did I see Steve McLain place his hands upon the woman in the car with him and I can state positively that what I saw was two people appearing to be friendly and appearing to be enjoying themselves."

At the hearing on the motion for a new trial, a second affidavit of Albert Mosser, given to the state's attorney, was introduced into evidence. In the second affidavit Mosser stated that "the affiant cannot state whether or not McLain and the female were talking and laughing, nor did the affiant observe whether or not McLain had his arm around the female nor whether or

---

**2.** Mosser did not identify the woman he saw at the truck stop as the complainant in either this

affidavit or another affidavit he executed later.

not he was holding the female by the throat." [3]

The essence of McLain's argument on appeal is that Mosser's affidavit is relevant to the key issue at his trial—whether the complainant consented to the sexual acts. McLain argues that the prosecution "obviously felt that the events leading up to the time when [he and the complainant] left the Alley Cat Bar were important in order for the jury to make a determination of the circumstances under which these two parties got together on that evening." He contends that a new trial must be granted so that Mosser, "an independent, outside observer," can relate his version of the events at the Alley Cat.

McLain wants to put Mosser's observations at the truck stop before a new trier-of-fact in order to refute the complainant's testimony that she was restrained at the truck stop.

The issue presented in this appeal is whether or not the affidavit of Albert Mosser satisfies the requirements for a new trial on the ground of newly discovered evidence.

 Under Rule 33, N.D.R.Crim.P., a new trial may be granted "if required in the interests of justice." A motion for a new trial on the ground of newly discovered evidence will be granted only if all the following conditions have been met: (1) the evidence must have been discovered since the trial, (2) the failure to learn of the evidence at the time of trial was not the result of defendant's lack of diligence, (3) the newly discovered evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably produce an acquittal in the event of retrial. State v. Stepp, 48 N.D. 566, 185 N.W. 812, 814 (1921); State v. Cray, 31 N.D. 67, 153 N.W. 425, 428 (1915). As a general rule, purely impeaching affidavits do not furnish a good ground for granting a new trial.

State v. Olson, 285 N.W.2d 575, 577 (N.D. 1979); State v. Young, 55 N.D. 194, 212 N.W. 857, 863 (1927); but see, United States v. Atkinson, 429 F.Supp. 880, 885 (E.D.N.C.1977) (in some circumstances impeaching evidence is sufficiently important so that a new trial should be ordered). Additionally, it is not error to refuse to grant a new trial where the newly discovered evidence is merely cumulative and does not tend to make "doubtful cases clear." State v. Reilly, 25 N.D. 339, 141 N.W. 720, 733 (1913).

 We have consistently held that a motion for a new trial is committed to the sound discretion of the trial court. State v. Smith, 153 N.W.2d 691, 695 (N.D.1967); State v. Cray, supra. The trial court's judgment in this respect is conclusive on this court, unless we can say that in denying the motion such discretion was abused. State v. Hummel, 73 N.D. 308, 14 N.W.2d 368 (1944); State v. Hazer, 57 N.D. 900, 225 N.W. 319, 322 (1929).

We do not think that the trial judge abused his discretion in denying McLain's motion for a new trial.

 Mosser's affidavit does place the complainant and McLain in an amiable setting in the lounge at an earlier time than either the complainant's or McLain's testimony. This testimony, however, would serve only to impeach the evidence presented by both parties at the trial. Similarly, Mosser's truck stop testimony, weakened by his own inconsistency, might cast doubt on the veracity of the complainant. As we noted above, purely impeaching affidavits do not generally furnish a good ground for granting a new trial. State v. Olson, supra.

Moreover, we do not think that Albert Mosser's affidavit is of such a nature that it would probably produce an acquittal in the event of retrial. His testimony that McLain was part of a conversational coterie

---

**3.** Mosser's testimony at the hearing on the motion for a new trial mirrors the inconsistencies in his two affidavits. He affirmed that his observation at the truck stop was of "two people out laughing and talking and having a good time." Mosser also stated that, from his vantage point at the truck stop, he could not discern whether the complainant was "laughing, smiling or crying."

which included the complainant probably would not affect the outcome, particularly when the complainant testified that she initiated a brief conversation with McLain later in the evening. Similarly, Mosser's indefinite testimony that "everything looked normal" and appeared friendly at the truck stop probably would not result in a favorable verdict.[4]

◼ We are mindful of McLain's contention that his trial amounted to a credibility contest between himself and the complainant. The law has long recognized, however, that the uncorroborated testimony of a victim is sufficient to establish all the elements of the crime of rape. *State v. Olmstead*, 246 N.W.2d 888, 890 (N.D.1976), *cert. denied*, 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978). We do not think that Mosser's testimony, bearing only on peripheral events that preceded the crime, "is of such probative force and character that, . . . considered with all the evidence adduced at the trial, it is likely to raise in the minds of reasonable men a reasonable doubt as to the guilt of the defendant . . . ." *State v. Stepp, supra*, 185 N.W. at 814. Accordingly, the order of the district court denying McLain's motion for a new trial is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

---

[4.] The State contends that the newly discovered evidence also fails to meet several of the other essential requirements for a new trial, e. g., the State argues that the failure to learn of the evidence was the result of a lack of diligence. The movant must, of course, satisfy each of the elements in order to warrant a new trial. *See, e. g., United States v. Hamilton*, 559 F.2d 1370, 1374 (5th Cir. 1977). In light of our conclusion that the evidence probably would not produce a different result on retrial, we find it unnecessary to address the other requirements.