STATE of North Dakota, Plaintiff and Appellee,

v.

Nick GROSS, Defendant and Appellant.

Cr. No. 949.

Supreme Court of North Dakota.

May 23, 1984.

Charles D. Orvik, State's Atty., Rugby, for plaintiff and appellee State.

A.S. Benson III, Benson Law Office, Bottineau, for defendant and appellant.

VANDE WALLE, Justice.

Nick Gross appealed from the judgment of conviction entered by the district court of Pierce County which found him guilty of gross sexual imposition. We affirm.

In December 1982 a social worker at Pierce County Social Services signed a com-

plaint charging Nick Gross with the offense of gross sexual imposition, in violation of Section 12.1–20–03(1)(d), N.D.C.C. The complaint alleged that Gross on numerous occasions had engaged in sexual intercourse with his 12-year-old daughter L. Prior to the filing of this complaint, a juvenile court hearing was conducted to determine if L. was a deprived child. At the hearing, after being advised of his right to remain silent and that any admission could be used against him in subsequent criminal proceedings, Gross admitted that he had an incestuous relationship with his daughter L.

Immediately prior to trial, the State and Gross entered into a plea agreement. The trial judge dismissed the jury panel, telling the members that they were excused because the parties had reached a settlement. After Gross revoked the plea agreement, the trial judge re-called for service the same jury panel. The judge stated:

"Yesterday when I told you I thought there had been a settlement, I was mistaken. I spoke too soon, and that's why I've had to ask you back here this morning.

"I want you to understand that the inconvenience that you may have been put to by this is not the responsibility of the parties, either of them, in any way. It's my fault and I'm sorry. I apologize to you."

After the trial judge denied Gross's motion for a new jury panel, the attorneys proceeded to select the jury.

At the trial L. testified that she had sexual intercourse with Gross on several occasions. The State also called as witnesses L.'s older sister, her mother, social service workers, and a physician. At the trial, Gross denied having an incestuous relationship with L. The jury found Gross guilty of gross sexual imposition. On appeal Gross raises six issues.

**I**

Gross contends that the jury instructions failed to articulate properly the elements of the offense of gross sexual imposition. Section 12.1–20–03, N.D.C.C., provides, in part:

"12.1–20–03. *Gross sexual imposition.*

"1. A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if: . . .

"d. The victim is less than fifteen years old; . . ."

In interpreting this statute the trial court instructed the jury that the offense of gross sexual imposition contains three elements: that the defendant engaged in a sexual act with another person, that he did so willfully, and that the victim was less than 15 years old at the time the offense was committed.

Gross requested that the jury be advised of a fourth element, that the sexual contact was done for the purpose of arousing or gratifying sexual desire. Gross argues that there are four elements because of his construction of Section 12.1–20–03(1)(d) and Section 12.1–20–02(1) and (2) [1981].[1] The trial court read to the jury the definitions of "sexual act" and "sexual contact" as set forth in Section 12.1–20–02 after specifying three elements of gross sexual imposition. Gross argues that because the definition of "sexual act" uses the term "sexual contact" and because "sexual contact" must be for the purpose of arousing or gratifying sexual desire, the State must prove that the sexual act was for the purpose of arousing or gratifying sexual desire.

■ In *State v. Jenkins*, 326 N.W.2d 67 (N.D.1982), a defendant argued that there was no evidence to establish the element that the alleged sexual contact was for the purpose of arousing or gratifying sexual desire. We stated:

"Whether or not the inference that the touching was for the purpose of arousing or gratifying sexual desire is within the

---

1. Section 12.1–20–02(2) has been recently amended. See 1983 N.D.Sess.Laws, ch. 172, § 7. The amendment eliminated the phrase

"for the purpose of arousing or gratifying sexual desire."

province of the trier of fact. The very nature of determining whether or not certain acts were done to arouse or satisfy a sexual desire, or that they did, can be determined primarily from the acts themselves as distinguished from outright admissions." 326 N.W.2d at 72.

Although we might agree with Gross that the purpose of the sexual act constitutes a fourth element of the offense of gross sexual imposition, the evidence supporting the jury's finding that Gross engaged in sexual intercourse establishes beyond a reasonable doubt that the sexual act was for the purpose of arousal or sexual gratification. Under these circumstances, any error arising as a result of the district court's refusal to indicate clearly this fourth element is harmless error.

## II

Gross contends that the district court erred in refusing to instruct the jury that incest is a lesser included offense within the crime of gross sexual imposition. At trial he based his motion for this instruction on his interpretation of *State v. Sheldon*, 301 N.W.2d 604 (N.D.1980), *cert. denied* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 204 (1981). On appeal he maintains that instructions are warranted if they are for "cognate offenses," as defined in *People v. Jones*, 395 Mich. 379, 236 N.W.2d 461 (1975).

 Section 12.1-01-04(15), N.D.C.C., provides, in part, that an "included offense" is one that is "established by proof of the same or less than all the facts required to establish commission of the offense charged." *State v. Sadler*, 305 N.W.2d 913 (N.D.1981). In *State v. Sheldon, supra*, this court stated that there are two variants of lesser included offenses:

"The first variant exists when it is impossible to commit the greater offense without committing the lesser included of-

fense. Therefore, the elements of the offenses are the same regardless of the proof offered in a particular case. The second variant exists when the second offense is presumptively necessarily included within the offense charged in the case." 301 N.W.2d at 611.

We recognized, however, that even if an offense is a lesser included offense, the evidence presented at trial determines if an instruction is warranted. Before a court may instruct the jury as to a lesser included offense, it must determine if the evidence creates a reasonable doubt as to the greater offense and supports a conviction of the lesser included offense beyond a reasonable doubt. See, e.g., *State v. Jacobson*, 338 N.W.2d 648 (N.D.1983); *State v. Trieb*, 315 N.W.2d 649 (N.D.1982). By requiring independent evidence of the greater and lesser included offenses, a court ensures that the jury will be less likely to reach decisions based on sympathy or on a desire to reach an agreement and more likely reach decisions based on the evidence actually presented. See *State v. Skjonsby*, 319 N.W.2d 764 (N.D.1982); *State v. Piper*, 261 N.W.2d 650 (N.D.1977).

 In the present case we need not consider if Section 12.1-01-04(15) and cases interpreting this section permit instructions for cognate offenses; nor do we need to determine if incest is a lesser included offense of gross sexual imposition.[2] The district court properly denied Gross's request for an instruction on incest because of the evidence presented at trial. The evidence either supported conviction of both offenses or neither offense. Gross therefore was not entitled to an instruction on incest because the evidence did not create a reasonable doubt as to the offense of gross sexual imposition.

## III

Gross argues that his Fifth Amendment right against compelled self-incrimination

---

**2.** There is one obvious difference between the crime of incest and the crime of gross sexual imposition: In the crime of incest the defendant must have intermarried, cohabited, or had sexual intercourse with another person related to him within a degree of consanguinity within which such marriages are declared incestuous and void. See Section 12.1-20-11, N.D.C.C. Thus, to prove the crime of incest, the State must prove at least one element which is not an element of the offense of gross sexual imposition under Section 12.1-20-03(1)(d).

was violated when the State used the admission he allegedly made at the juvenile court hearing in its case-in-chief. Gross does not challenge the State's use of his admission when it cross-examined him, after he denied having had an incestuous relationship with L.; he does contend that the district court should not have permitted a social worker to testify that she heard Gross at the juvenile court hearing admit that he had an incestuous relationship with L.

■ The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself, ..." U.S. Const., Amend. V. See also N.D. Const., Art. I, § 12. A defendant may refuse to provide self-incriminating answers in civil as well as criminal proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).

■ In the present case the trial judge reviewed the record, the court's notes, and the transcript of the juvenile court hearing. The trial judge stated that Gross had been represented by counsel at the juvenile court hearing, that he had been advised of his right to not incriminate himself, that he had been informed of other rights he would be waiving if he admitted the incestuous relationship, and that the admission could be used in subsequent criminal proceedings. At the time of the juvenile court proceeding, Gross was not under arrest. We agree with the trial court that the defendant knowingly and intelligently waived his right against compelled self-incrimination. The use of the admission as substantive evidence thus did not violate Gross's right against compelled self-incrimination.[3]

IV

Gross contends that the district court erred in denying his motion for a new jury panel. He maintains that after the trial judge told the jury panel that the case had been "settled" the panel members knew

that the case had been either dismissed or there had been a plea agreement. Gross argues that when the trial judge re-called the same jury panel, the members then knew that there had been a plea agreement.

■ The Sixth Amendment, which is applicable to the States through the Fourteenth Amendment, guarantees a defendant the right to an impartial jury. U.S. Const., Amend. VI; see Section 29–01–06(5), N.D.C.C.; see also *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). The Sixth Amendment does not prescribe a specific test for determining the impartiality of jurors, but voir dire is the traditional method for ascertaining impartiality. See *State v. McLain*, 301 N.W.2d 616 (N.D.1981). A defendant may seek dismissal of the entire jury panel or of specific jurors for cause. See Section 29–17–19, N.D.C.C.; Section 29–17–33, N.D.C.C. Under Section 29–17–19 dismissal of the entire panel is proper when there has been a material departure in the process of selecting the panel. In the present case the defendant does not challenge this process; thus Section 29–17–19 is inapplicable.

Gross appears to base his request for a new panel upon the alleged actual bias of each member of the panel. Section 29–17–35(2) defines actual bias as:

"The existence of a state of mind on the part of the juror, with reference to the case or to either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try the issue impartially without prejudice to the substantial rights of the party challenging, and which is known in this title as actual bias."

■ The existence of actual bias must be determined from voir dire examinations of prospective jurors. See *State v. Ternes*, 259 N.W.2d 296 (N.D.1977), *cert. denied* 435 U.S. 944, 98 S.Ct. 1524, 55 L.Ed.2d 540 (1978). In the present case the voir dire

---

**3.** Although Gross relies on the procedure adopted by this court in *State v. Haas*, 268 N.W.2d 456 (N.D.1978), we find no similarity between a hearing for revocation of probation or parole and a juvenile court hearing, the purpose of which is to protect a child's interests.

examinations are not available for review because Gross's attorney did not request the court reporter to record them. See *State v. Rougemont*, 340 N.W.2d 47 (N.D. 1983). At oral argument Gross's attorney stated that even though during voir dire he had asked a few panel members questions relating to the "settlement," he had decided to discontinue this line of questioning because he thought his client would be prejudiced or that a mistrial might occur.

 A trial court determines whether or not a panel member should be dismissed for cause, and its determination will not be disturbed unless the court has abused its discretion. *State v. McLain, supra.* A trial court abuses its discretion when it manifests an unreasonable, arbitrary, or unconscionable attitude. *Nygaard v. Robinson*, 341 N.W.2d 349 (N.D. 1983).

 Although the present case is distinguishable from cases discussing the effect of widespread publicity, the principle of ensuring impartiality is nonetheless applicable. In *State v. Olson*, 290 N.W.2d 664, 667 (N.D.1980), we quoted with approval *Irvin v. Dowd*, 366 U.S. 717, 722–723, 81 S.Ct. 1639, 1642–1643, 6 L.Ed.2d 751, 756 (1961):

> "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

Voir dire provides an opportunity for a defendant to determine if a panel member can be impartial and can render a verdict based exclusively on the evidence presented at trial. In the absence of evidence to the contrary, the jury is presumed to not have been influenced by other events or evidence. *State v. McLain, supra.*

 In the present case Gross had the opportunity to examine each panel member on voir dire. The trial judge observed these proceedings and listened to the members respond to the questions asked by counsel. We do not believe that the re-calling of the panel members constitutes actual bias per se. In the absence of evidence to the contrary, we presume that the jury acted impartially. Therefore, the trial court did not abuse its discretion in denying Gross's motion for a new jury panel.

### V

Gross argues that the trial court erred in denying his motion to exclude the testimony of a physician. Prior to trial Gross received from the State, pursuant to a court order, a copy of a medical report prepared by the physician who testified at trial. The report stated that the physical examination of L. revealed she was normal for her age, except that her hymen was not intact. At trial the examining physician testified that the report was incorrect. The physician stated that the speculum inserted in L.'s vagina passed easily and that unless 18-year-old females are sexually active, they cannot pass a speculum so easily. Gross contends that the physician's testimony should have been excluded because it constituted undue prejudice, under Rule 403, N.D.R.Ev.

 Rule 403 provides, in part, that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, ..." Rule 403 vests wide discretion in the trial court to control the introduction of evidence. *Allen v. Kleven*, 306 N.W.2d 629 (N.D.1981); *Smith v. American Family Mut. Ins. Co.*, 294 N.W.2d 751 (N.D.1980). Under Rule 403 surprise is not a ground for exclusion. In *Gerhardt v. D.L.K.*, 327 N.W.2d 113, 115, n. 7 (N.D.1982), we stated: "The proper remedy for 'unfair surprise' is a continuance." In the present case, any prejudice could have been remedied by a motion for a continuance. No continuance was requested. The trial court therefore properly denied Gross's motion for exclusion of the physician's testimony.

## VI

Gross argues that the district court erred in denying his request for a cautionary jury instruction. Gross contends that in a prosecution for incest a jury should be instructed that it may view the complainant's testimony with caution. Gross's requested instruction was based upon *People v. Covert*, 249 Cal.App.2d 81, 57 Cal.Rptr. 220 (1967), which provided that such an instruction is appropriate even if the defendant's case is weak. See, generally, 41 Am.Jur.2d, *Incest*, § 13, 520 (1968). Gross maintains that a cautionary instruction is also proper when a defendant has been charged with gross sexual imposition.

The instruction Gross sought is based on the observation of Lord Hale, a seventeenth-century jurist, who wrote that because rape is a charge easily made and difficult to defend against the complainant's testimony should be examined with caution. See 92 A.L.R.3d 866 (1979). After the decision in *People v. Covert, supra,* the California Supreme Court in a scholarly opinion held that the use of a cautionary instruction is inappropriate. See *People v. Rincon-Pineda*, 14 Cal.3d 864, 123 Cal. Rptr. 119, 538 P.2d 247 (1975). Many other courts, State and Federal, have similarly disapproved of a cautionary · instruction. See, e.g., *United States v. Bear Ribs*, 562 F.2d 563 (8th Cir.1977), *cert. denied* 434 U.S. 974, 98 S.Ct. 531, 54 L.Ed.2d 465 (1977); *Burke v. State*, 624 P.2d 1240 (Alaska 1980); *State v. Smoot*, 99 Idaho 855, 590 P.2d 1001 (1978); *State v. Feddersen*, 230 N.W.2d 510 (Iowa 1975).

In *State v. Champagne*, 198 N.W.2d 218 (N.D.1972), this court discussed an aspect of the cautionary instruction, specifically whether or not a trial court erred in failing to instruct the jury to be careful to avoid prejudice which might result from the heinous nature of the charged offense of rape. The defendant was convicted of first-degree murder of the woman he raped. We stated that the trial court had properly protected the defendant's rights because it had instructed the jury on related issues, such as the presumption of innocence, the heavy burden of proof, and the jury's duty to consider and weigh the evidence.

In *State v. Young*, 55 N.D. 194, 212 N.W. 857 (1927); a defendant requested the court to instruct the jury that it could consider a complainant's morals in determining her credibility. This court held that the trial court properly refused the instruction because "[i]nstructions on the credibility of witnesses should apply alike to all witnesses, whether they are for the prosecution or for the defense.... [I]n the absence of special circumstances, the court should not single out the witness of either the State or the defendant ..." 55 N.D. at 200, 212 N.W. at 860.

In the present case the district court read an instruction concerning the jury's duty to weigh the evidence. The instruction specified various aspects the jury was to consider in determining the credibility of the witnesses. We believe that the general instruction given in the present case properly protected Gross's right to a fair trial. We do not believe that a complainant's testimony should be subject to a greater standard of scrutiny than the testimony of other witnesses. A jury logically considers possible bias in determining a complainant's credibility. If a cautionary instruction were allowed, a complainant would be treated differently from other witnesses and from other victims of crime. A cautionary instruction also improperly emphasizes the nature of the offense, not the nature of the evidence. With a general instruction a jury can determine the credibility of a complainant in view of the circumstances of the alleged crime. We see no reason to confuse a jury with a rule concerning the credibility of a witness. See *Urlaub v. Urlaub*, 325 N.W.2d 234 (N.D.1982). We therefore hold that the trial court properly denied Gross's request for a cautionary instruction.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.