STATE of North Dakota, Plaintiff and Appellee,

v.

Larry SCHLICKENMAYER, Defendant and Appellant.

Cr. No. 1027.

Supreme Court of North Dakota.

March 13, 1985.

Charles Whitman, Asst. State's Atty. (argued), Bismarck, for plaintiff and appellee.

Phillip J. Brown (argued), Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

Larry Henry Schlickenmayer appeals from an order of the district court denying his application for post-conviction relief. We affirm.

Schlickenmayer was found guilty by a jury of the crime of negligent homicide, in that he negligently caused the death by hypothermia of Viola Karas. Karas' frozen body was discovered at approximately 6:45 a.m. on February 2, 1982, lying on Highway 1804 several miles northwest of Bismarck. The facts established at trial are recited in our earlier opinion affirming the judgment of conviction [*State v. Schlickenmayer*, 334 N.W.2d 196 (N.D.

1983)], and we incorporate that statement in deciding this appeal.

On November 7, 1983, Schlickenmayer applied to the District Court of Burleigh County for post-conviction relief pursuant to Chapter 29–32 of the North Dakota Century Code. At Schlickenmayer's request, the district court appointed an attorney, James J. Coles, who filed an amended application with the court on March 7, 1984. In support of his application, Schlickenmayer alleged that there exists evidence of material facts, not previously presented and heard, that requires vacation of his conviction:

> "[T]he defendant believes that he should have sufficient time to arrange for the services of an expert in the matter of death by hypothermia. The defendant believes that such expert would testify that under the circumstances in this case ... that it could be shown that the victim would have been unable to walk the distance of approximately eight miles, which was established at the time of trial. This would show that there were other individuals involved who had assisted Ms. Karas and would show that there had been an intervening cause for her death other than the actions of the defendant." [1]

Schlickenmayer also alleged that he was denied effective assistance of counsel at his trial for the following reasons:

> (1) "[C]ounsel created undue prejudice against the defendant ... in that during the course of the trial he delivered a check in payment of witness fees and mileage to a witness in view of the jury thereby creating in the mind of the jury

the impression that the witness had in effect been 'paid' for his testimony."

(2) Counsel "failed to properly cross-examine one of the State's witnesses, Avis Jensen.... [U]nder proper cross-examination, it would have been shown that this witness had made prior inconsistent statements and ... could have been impeached."

(3) Counsel did not call additional persons who were at the scene where Karas died. "[T]he testimony of these witnesses would have provided additional evidence as to the exact time of death of Ms. Karas which would have had a bearing on the charge of negligent homicide of which the defendant was convicted."

At the close of a hearing held April 23, 1984, the district court denied Schlickenmayer's application. Upon examining Schlickenmayer's allegations, we believe that they do not raise the possibility of a substantial issue of law or fact and provide no basis for post-conviction relief.

### Evidence of Material Facts

The district court assumed that an expert on death by hypothermia would testify that under the circumstances Karas could not have walked the distance from the location where Schlickenmayer testified Karas left his vehicle, to the location where her body was subsequently discovered. The court concluded that the logical result to be reached from such testimony would be that Schlickenmayer let Karas out of his vehicle at a location different from where he testified that he did.

Schlickenmayer asserts that the expert testimony concerning death by hypothermia, "discovered" through his own effort

---

1. In his application, Schlickenmayer alleged that he has reason to believe that three young men were driving on Highway 1804 during the early morning of February 2, 1982, looking for the father of one of the men, and may have seen Karas or given her a ride. The persons named have apparently denied having any such knowledge. Schlickenmayer requested that the district court require these persons "to take a lie detector test regarding any information they may have regarding the night upon which Ms. Karas died and that they should be required to

undergo depositions wherein their testimony would be taken under oath." The matter is not raised on appeal to this court for the following reasons stated in Schlickenmayer's brief: "it is clear that the Court could not, under any circumstances, require anyone to undergo a lie detector test and it is also clear from the record that the individuals in question have denied, and would continue to deny any knowledge of Ms. Karas or anything concerning her on the night in question."

since trial, is newly discovered evidence which warrants the granting of a new trial, citing *State v. McLain*, 312 N.W.2d 343 (N.D.1981). Schlickenmayer asserts in the alternative that if this court should determine that such evidence is not newly discovered, the failure of his trial attorney to present such evidence at trial is a further indication of ineffectiveness of counsel.

Grounds for post-conviction relief include the situation where "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." § 29–32–01(d), N.D.C.C. This ground is similar to the ground for a new trial based on newly discovered evidence recognized under Rule 33, N.D.R.Crim.P. In *McLain*, 312 N.W.2d at 346, and more recently in *State v. Hegland*, 355 N.W.2d 803, 805 (N.D.1984), we set forth the requirements which must be established for a new trial on the ground of newly discovered evidence:

> "[A] motion for a new trial on the ground of newly discovered evidence will be granted only when all of the following requirements are met: (1) the evidence must have been discovered since the trial, (2) the failure to learn of the evidence at the time of trial was not the result of defendant's lack of diligence, (3) the newly discovered evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably produce an acquittal in the event of retrial."

■ We hold that the sufficiency of the showing necessary to obtain a new trial based on newly discovered evidence is the same whether the ground is raised in a motion for new trial or in an application for post-conviction relief. *See State v. Sims*, 239 N.W.2d 550, 554–55 (Iowa 1976).

■ Even if we were to assume that we are presented with newly discovered evidence, we cannot conclude, in light of the entire record, that the expert's testimony is of such a nature that it would probably produce an acquittal in the event of retrial. In our view, Schlickenmayer has presented no evidence of the existence of a concurrent cause clearly sufficient to produce the death of Karas, which rendered his negligent conduct a clearly insufficient cause. *See* § 12.1–02–05, N.D.C.C.[2]

*Effectiveness of Counsel*

The proper standards for judging a criminal defendant's claim of actual ineffective assistance of counsel under the Sixth Amendment, as articulated by the United States Supreme Court in *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), were reviewed in detail by this court in a recent opinion, *State v. Thompson*, 359 N.W.2d 374, 377 (N.D.1985). *See also State v. Patten*, 353 N.W.2d 30, 33 (N.D.1984). In *Strickland*, the Court stated that a defendant who claims that he received ineffective assistance of counsel must establish two elements: that counsel's performance was deficient, and that the deficient performance prejudiced the defense. 104 S.Ct. at 2064. After examining carefully the record in light of the standards articulated in *Strickland*, we conclude that Schlickenmayer has failed to show that the performance of his trial attorney was deficient.

Schlickenmayer's trial attorney, in an affidavit submitted to the district court, alleged that he did consult with an expert witness and considered the possibility of calling one at trial. However, he believed that if an expert had testified at trial that Karas could not have walked the distance from where Schlickenmayer testified Karas left his vehicle to where her body was found, the jury may have surmised that Schlickenmayer was not telling the truth as to where he let Karas out, and may have convicted him of manslaughter.

---

2. Section 12.1–02–05, N.D.C.C., reads as follows:
  "Causation may be found where the result would not have occurred but for the conduct of the accused operating either alone or con-

currently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the accused clearly insufficient."

In our view, trial counsel's decision not to present such expert testimony was a matter of trial strategy within the range of professionally competent assistance. As the Court made clear in *Strickland:* "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 2066.

Schlickenmayer asserts that he received ineffective assistance of counsel because certain individuals who were present at the scene where Karas died were not called to testify as to the exact time of Karas' death. Schlickenmayer argues that the issue before this court is whether or not the "possible mistake" as to the exact time of Karas' death warrants a new trial in that "a jury might consider that to lessen the culpability of Schlickenmayer and place more emphasis on the measures taken to revive Karas after she was discovered." However, Schlickenmayer does not name or demonstrate how any potential witnesses, who could have been called to testify at the trial, could have testified in his favor. *State v. Mehralian*, 301 N.W.2d 409, 416 (N.D.1981). Conclusory allegations that counsel failed to call certain witnesses without indicating what the testimony would have been, how it might have affected the outcome of the trial, or what prejudice may have resulted from the failure to call them, do not support a claim of ineffective assistance of counsel.

As indicated in our earlier opinion [*Schlickenmayer*, 334 N.W.2d at 197 n. 1], the precise time of Karas' death is not certain. There may have been additional persons at the scene where Karas was found who did not testify and who would also indicate that Karas might have been alive at that time. Such testimony, however, would have been only cumulative in nature, and it is not improper to fail to call a witness whose testimony would have been cumulative to evidence already in the record. *E.g., United States v. Miller*, 643 F.2d 713, 714 (10th Cir.1981).

Furthermore, it appears very unlikely from the record that Karas could have been, by any means, revived after her body was discovered. The pathologist who performed the autopsy of Karas testified that Karas' body temperature was 63° F or less, two and one-half hours after her body was transported to the hospital emergency room wherein the room temperature was 70° F. The pathologist testified that the lowest core temperature that any person has been known to survive is 64.4° F, and that most perish at a body temperature "in the ranges of seventy, even as high as seventy-eight." We are also not convinced that someone else's failure, if it could be so proved, to revive Karas after her body was discovered could excuse Schlickenmayer for his negligent conduct.

Schlickenmayer also asserts that his trial counsel failed to adequately cross-examine Avis Jensen, the woman who sat with Schlickenmayer and Karas at the Paper Dollar and Covered Wagon bars earlier in the evening on February 1, 1982. The cross-examination of a witness is ordinarily a matter of trial strategy. *See State v. Motsko*, 261 N.W.2d 860, 863 (N.D.1977). We have said that it is not our function to second-guess tactical decisions of defense counsel at trial. *Id.* at 864.

The important moments in this case are not the period covered by the testimony of Jensen. Furthermore, an examination of the trial transcript reveals that Jensen was adequately cross-examined, and effectively impeached concerning prior inconsistent statements that she made.

There is also no merit to Schlickenmayer's assertion that his trial counsel's delivery, in view of the jury, of a check to a defense witness for witness fees and mileage prejudiced him. Immediately following the incident, the court explained to the jury the reason for the compensation:

"THE COURT: ... Just so the jury doesn't get the wrong impression, because I think they may, it appears to me that [counsel] ... has just paid him the witness fee as authorized by law. [*See*

Chapter 31–01, N.D.C.C.] ... I mean, I just didn't want the jury to get the wrong impression that we pay off witnesses. It's the witness fee and mileage ..., and I wanted that clear for everyone's concern here in this case."

There is no reason for us to assume that any of the jurors disregarded the admonition given by the court. In the absence of contrary evidence, a presumption exists that a jury performed its duties in accordance with the law and was not influenced by other events. *State v. Hepper*, 316 N.W.2d 338, 340 (N.D.1982). We conclude that no prejudice to Schlickenmayer occurred.

The district court's order denying Schlickenmayer's application for post-conviction relief is affirmed.

VANDE WALLE and GIERKE, JJ., and PEDERSON, Surrogate Justice, concur.

Surrogate Justice PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.