2009 ND 151

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Benjamin Lee PROCIVE, Defendant and Appellant.**

No. 20080269.

Supreme Court of North Dakota.

Aug. 18, 2009.

Tom M. Henning, State's Attorney, Dickinson, N.D., for plaintiff and appellee.

Michael Ray Hoffman, Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Benjamin Lee Procive appeals from a criminal judgment entered after a jury convicted him of aggravated assault under N.D.C.C. § 12.1–17–02, a class C felony. We conclude the district court did not abuse its discretion by admitting the testimony of a rebuttal witness. We affirm.

I

[¶ 2] In December 2007, Kurt Obrigewitch attended an early morning party at Procive's residence after the bar had closed. Obrigewitch walked to Procive's residence from the bar with a six-pack of beer. During the party, while Obrigewitch was sitting on a bench visiting with Allan Kasian, Procive approached Obrigewitch and took Obrigewitch's shoes off. About fifteen minutes later Obrigewitch asked Procive where his shoes were, and Procive said that friends had taken them and he would have to find them. Obrigewitch and Kasian went outside and saw the shoes

hanging on a power line. Procive also went outside. At that point, Procive and Obrigewitch exchanged heated words.

[¶ 3] Obrigewitch testified at trial that although he didn't see the blow, he "must have been struck there or hit." Obrigewitch remembered waking up kind of dazed. Obrigewitch testified that he believed he was "struck and took a blow to lose [his] consciousness like that." Kasian testified as to the exchange of words after finding the shoes hanging on the power line, but he also did not see the blow. Kasian testified that he heard a body falling and people being hit, and when he turned back, Obrigewitch was lying on the ground. Kasian testified that when he asked Procive why he had hit Obrigewitch, Procive responded, "[H]e got in my face. I just couldn't help myself. I had to hit him."

[¶ 4] Procive testified in his own defense, asserting self-defense and stating, "I seen [sic] his arm move in an upward motion, so I struck him like this [indicating] and he took two steps back and fell straight back hitting his head." Procive also testified, "I was just feeling scared and threatened," and "I just wanted him to get away from me." Procive testified that he was not trying to hurt Obrigewitch, but thought Obrigewitch was going to hit him and wanted Obrigewitch to go.

[¶ 5] Procive was charged by criminal information alleging that he willfully caused serious bodily injury to another human being when he struck Obrigewitch in the head with his fist, knocking Obrigewitch unconscious, in violation of N.D.C.C. § 12.1–17–02. During trial, the State presented testimony from Kurt Obrigewitch and Allan Kasian, in addition to rebuttal testimony from Tammy Obrigewitch, Kurt Obrigewitch's sister-in-law. Procive testified in his own defense and also presented testimony from one additional witness. The court's instructions to the jury included the defense of self-defense. The jury found Procive guilty of the charge.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal from the criminal judgment was timely under N.D.R.App.P. 4(b), and this Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 29–28–06.

II

[¶ 7] Procive raises one issue on appeal: "Was the testimony of Tammy Obrigewitch improper impeachment and otherwise inadmissible under the North Dakota Rules of Evidence, and should its introduction result in a new trial?" Procive argues that the district court erred by permitting Tammy Obrigewitch, Kurt Obrigewitch's sister-in-law, to testify during the trial as a rebuttal witness regarding a conversation she purportedly had with Procive at a bar days after the altercation between Procive and Kurt Obrigewitch.

[¶ 8] This Court reviews a district court's evidentiary rulings for an abuse of discretion. *State v. Streeper*, 2007 ND 25, ¶ 11, 727 N.W.2d 759. "Under N.D.R.Ev. 401, 402, and 403, a district court has broad discretion in admitting or excluding evidence." *State v. Charette*, 2004 ND 187, ¶ 12, 687 N.W.2d 484. The district court abuses its discretion in evidentiary rulings when the court acts arbitrarily, capriciously, or unreasonably, or if it misinterprets or misapplies the law. *State v. Ramsey*, 2005 ND 42, ¶ 8, 692 N.W.2d 498.

[¶ 9] Rule 401, N.D.R.Ev., states that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without

the evidence." Rule 402, N.D.R.Ev., provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible. Under N.D.R.Ev. 403, however, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "The power to exclude evidence under N.D.R.Ev. 403 should be sparingly exercised," and "[p]rejudice due to the probative force of evidence is not unfair prejudice." *Lemer v. Campbell,* 1999 ND 223, ¶ 18, 602 N.W.2d 686 (citing *State v. Klein,* 1999 ND 76, ¶ 5, 593 N.W.2d 325).

[¶ 10] "Under N.D.R.Ev. 103(a), an objection to the introduction of evidence must state the specific ground of objection, if the specific ground is not apparent from the context." *Western Nat'l Mut. Ins. Co. v. University of North Dakota,* 2002 ND 63, ¶ 40, 643 N.W.2d 4; *see State v. Hart,* 1997 ND 188, ¶ 22, 569 N.W.2d 451; *State v. Helgeson,* 303 N.W.2d 342, 346 (N.D. 1981); *see also State v. Raywalt,* 436 N.W.2d 234, 239 (N.D.1989) (holding that although defendant objected to evidence on other grounds, defendant failed to object on Rule 403, N.D.R.Ev., grounds and refusing to consider defendant's alleged error on appeal because it did not rise to the level of obvious error under N.D.R.Crim.P. 52(b)).

[¶ 11] Before trial and after voir dire, Procive moved for a pretrial order excluding the testimony of all of the State's witnesses except for Larry Johnson, who was the only witness listed in the criminal information. Procive argued, and the State conceded, that no list of witnesses had been provided in response to Procive's request for discovery and production of documents.

[¶ 12] After the district court ascertained that Procive's counsel was aware of the existence of both Kurt Obrigewitch, as the victim, and Allan Kasian, as a witness present at the confrontation, the court granted Procive's motion with respect to Tammy Obrigewitch, precluding her from testifying in the State's case-in-chief. The district court, however, specifically reserved ruling on rebuttal witnesses. *See* N.D.R.Crim.P. 16(d)(2) (providing district court discretion in imposing sanctions for failure to comply with Rule 16); *Nesvig v. Nesvig,* 2006 ND 66, ¶ 31, 712 N.W.2d 299 ("[A]ny order sustaining a motion in limine and excluding evidence is interlocutory in nature and subject to change by the district court during the course of the trial."); *State v. Halvorson,* 346 N.W.2d 704, 712 (N.D.1984) (discussing *State v. Jungling,* 340 N.W.2d 681, 683–84 (N.D.1983), in which this Court held a rebuttal witness does not have to be endorsed on an information).

[¶ 13] Procive elected to testify in his own defense at trial. During the State's cross-examination of Procive, he testified:

Q Do you recall talking to Tammy Obrigewitch on New Year's Eve of this year?

A No, sir.

Q You don't recall talking to Ms. Obrigewitch in a downtown bar in Dickinson?

A No, sir.

Q You don't recall telling—having any conversation with Ms. Obrigewitch?

A No, sir.

[¶ 14] Procive did not object to this cross-examination. After the defense had rested its case, the State called Tammy Obrigewitch as a rebuttal witness, and the defense "renew[ed][its] objection." The district court permitted Tammy Obrigewitch to testify and stated, "There was only

one question that was asked of her and that's what the rebuttal would be limited to. I'm assuming that's what your question is going to be. You can renew your objection if it goes beyond what [sic]—do you want to raise your right hand?" Tammy Obrigewitch testified that she is the sister-in-law of Kurt Obrigewitch and that she had been at Procive's residence but did not witness the assault. Tammy Obrigewitch testified as follows:

Q   And do I understand you correctly that you spoke to Mr. Procive on New Year's Eve at a bar in Dickinson, North Dakota?

A   Yes.

Q   And did you ask him a specific question?

A   Yes.

Q   What question did you ask him?

A   I asked him why he did what he did.

. . . .

MS. NORDSVEN: Your Honor, now I'm certainly going to object to more.

THE COURT: You're back at the conversation regarding in the bar right afterwards?

MR. HENNING: Yep.

THE COURT: Okay.

DIRECT EXAMINATION: CONTINUED BY MR. HENNING:

Q   And so what did you ask him at the bar?

A   I asked him why he did what he did.

Q   And what did he tell you?

A   He just said that if I say anything, I'll incriminate myself.

. . . .

Q   Did you ask him further questions?

A   Yes, I did.

Q   What did you ask him?

A   I . . . just said to him, if he didn't want him in his house that he should have asked him to leave. I just asked him if he was that heartless to go and harm somebody like that.

Q   And did he respond?

A   He just looked . . . at me and didn't say anything.

However, Procive's attorney did cross-examine Tammy Obrigewitch:

CROSS–EXAMINATION:   BY   MS. NORDSVEN:

Q   And his response to you was, "I'm not going to say anything. I'm not going to incriminate myself."

A   Yep.

Q   He didn't tell you what he meant by that?

A   No.

Q   Okay. Are you assuming that he was admitting that he did something wrong by saying that?

A   I'm not assuming anything.

Q   You're not assuming anything. So you don't know what he meant by that?

A   No.

Q   Okay. And this took place where?

A   We were at the Esquire.

Q   Were you drinking on that evening?

A   Yes, I was.

Q   And how much had you had to drink before you went up to Mr. Procive and initiated this conversation?

A   I was just there probably like 10, 15 minutes before he talked [sic] in.

Q   My question is, how much had you had to drink before you went up and initiated this conversation with Mr. Procive?

A   Probably like three or four sips of my drink.

Q   Three or—and what were you drinking?

A   I had a Crown and Coke.

Q And had you drank before you got there?

A No.

Q And Mr. Procive didn't take you on, didn't argue with you, didn't say anything, just said, "I'm not going to incriminate myself by talking to you"?

A Right.

Q That was the sole thing he said?

A Right.

MS. NORDSVEN: No further questions.

MR. HENNING: State rests.

[¶ 15] The State in its rebuttal closing argument reiterated Tammy Obrigewitch's testimony that Procive had said, "I can't talk to you. I'll incriminate myself." However, before the State made its rebuttal closing argument, Procive's attorney stated the following in her closing argument:

Now, the last thing I want to touch on. We have Tammy Obrigewitch take the stand and say, Mr. Procive said he wasn't going to incriminate himself. All right. And Mr. Henning said to Mr. Procive—excuse me—Mr. Procive. We all heard it, and I think we need to discuss it. I asked Mr. Procive, "Did you talk to Tammy? Did you talk to her," and his answer was, "No." And then he followed, "Are you sure you didn't talk to her," and he said, "No." Then we bring Tammy and then we have this story he said. "All right. Think about this." Tammy admits she's been drinking, and what does she do? She does the same thing her brother-in-law did. She comes up to him, and what does he say, "I don't want to incriminate myself." What did that mean? Did she take that as an admission that he was doing something wrong? Apparently that's what they want you to think, or

was that simply a statement, I have a right to not talk about this. "I'm not going to say anything to incriminate myself," and then what happened? She said that he refused to talk to her. He didn't talk to her.

Now, I would suggest to the jury that he did exactly what he should have done. He didn't want to talk about this incident. Anything he would have said—anything he would have said would have been interpreted by Tammy Obrigewitch in a light that would not have been to his benefit. So he didn't talk to her and told Mr. Henning. Now, I suppose we can quibble, did Mr. Henning—did he say any word, was there a communication problem here between the two? I don't know.

[¶ 16] The State offered Tammy Obrigewitch's testimony as a rebuttal after Procive testified he did not recall having any conversation with her. Procive argues this was improper impeachment. Procive argues that whether he had spoken with Tammy Obrigewitch in a bar in Dickinson on New Year's Eve is a "collateral" issue and that it was therefore improper for the State to call her as a witness to impeach Procive's credibility. Procive contends that the State was improperly attempting to "set Procive up for impeachment." Procive further argues that whatever probative value Tammy Obrigewitch's testimony regarding Procive's statement had toward impeachment "was substantially outweighed by the danger of unfair prejudice, confusion, and being misleading."

[¶ 17] In *State v. Folk*, 278 N.W.2d 410, 415 (N.D.1979) (discussing *State v. Larson*, 253 N.W.2d 433, 436 (N.D. 1977)), this Court observed that "the rule had long been that where a witness is cross-examined on a collateral issue, the examiner is bound by the answer given and cannot thereafter introduce testimony

of a third party for impeachment purposes." However, in *State v. McLain*, 301 N.W.2d 616, 624 n. 2 (N.D.1981), this Court also stated:

Historically, limitations on impeachment by contradiction were imposed by the "collateral" rule—extrinsic evidence is not admissible to show a specific contradiction on a matter classified as collateral. Under the North Dakota Rules of Evidence, Rule 403, as applied to impeachment by contradiction, requires courts to exclude the proffered impeachment evidence if its probative value was substantially outweighed by factors such as confusion, prejudice, and waste of time. See Weinstein's Evidence ¶ 607[05].

Therefore, as this Court recognized in *McLain*, rather than a rigid application of a "collateral" impeachment rule, a court properly considers N.D.R.Ev. 403 in deciding whether the proffered impeachment evidence should be admitted. A major treatise has discussed this approach within the context of federal practice:

The continued application of the standard theory of collateral contradiction in federal practice has been criticized on the ground that it is a mechanistic doctrine which ignores pertinent policy considerations. It has been urged that the courts should substitute the discretionary approach of Rule 403. That approach is the better construction of the federal statutes. Although Rule 608(b) expressly prohibits extrinsic evidence of a witness's untruthful acts, the Federal Rules do not expressly codify a categorical collateral fact restriction. For example, there is no mention of that restriction in Rule 613 governing prior inconsistent statement impeachment. Given Rule 402, there is a powerful argument that the collateral fact rule was impliedly repealed by the enactment of

the Federal Rules. Under this reading of the Federal Rules, there is no rigid prohibition of introducing extrinsic evidence to impeach a witness on a collateral matter; rather, under Rule 403, the judge would make a practical judgment as to whether the importance of the witness's testimony and the impeachment warrants the expenditure of the additional trial time. However, the collateral fact rule was so ingrained at common law that many federal opinions continue to mention "collateral" evidence.

1 Kenneth S. Broun, *McCormick on Evidence* § 49, at 237–38 (6th ed. 2006) (footnote omitted) (noting also that "[t]he abolition of the collateral fact doctrine by the Federal Rules is a two-edged sword," in that a judge must make a "practical judgment call," "could conceivably bar evidence which would technically have been considered non-collateral and admissible at common law," and "[e]ven if the evidence is otherwise admissible, it is not invulnerable to a Rule 403 objection").

[¶ 18] The State argues on appeal that the district court properly admitted Tammy Obrigewitch's testimony as rebuttal because Procive's purported statement to Tammy Obrigewitch is an "admission by a party opponent" under N.D.R.Ev. 801(d)(2). Under N.D.R.Ev. 801(d)(2), a statement made by one party which is offered against the party by the opponent is admissible, substantive, and non-hearsay evidence. See N.D.R.Ev. 801, Explanatory Note; *State v. Strutz*, 2000 ND 22, ¶ 17, 606 N.W.2d 886 (defendant's statement "he was 'too good a burglar' to have committed a burglary in the snow" was an admission by a party opponent); *see also United States v. Reed*, 227 F.3d 763, 770 (7th Cir.2000) (admission need not be "incriminating, inculpatory, against interest, nor otherwise inherently damaging to the de-

clarant's case"); 2 Kenneth S. Broun, *McCormick on Evidence* § 254, at 181 (6th ed. 2006) ("Admissions are simply words or actions inconsistent with the party's position at trial, relevant to the substantive issues in the case, and offered against the party."). Nonetheless, under N.D.R.Ev. 403, the district court may still exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *See Strutz,* 2000 ND 22, ¶ 17, 606 N.W.2d 886.

[¶ 19] In this case, we conclude Tammy Obrigewitch's testimony regarding Procive's alleged statement to her on New Year's Eve is not hearsay and is admissible under N.D.R.Ev. 801(d)(2). Notably, Tammy Obrigewitch's testimony would have been admissible in the State's case-in-chief but for the court's decision granting Procive's pretrial motion precluding her from initially testifying based upon the State's failure to list her as a witness in the information and failure to respond to Procive's discovery request. The district court, however, explicitly did not rule on whether Tammy Obrigewitch would be permitted to testify as a rebuttal witness.

[¶ 20] Although Procive argues on appeal that Tammy Obrigewitch's testimony constituted improper impeachment as to whether Procive remembered an alleged conversation with her, we believe Procive takes too narrow a view of the testimony's purpose in rebutting Procive's own testimony. During trial, Procive took the stand in his own defense, testifying that during the confrontation he had seen Kurt Obrigewitch's arm moving upward and felt scared and threatened, and so Procive struck him. Procive testified he was not trying to hurt Obrigewitch but thought Obrigewitch was going to hit him, and he, in essence, acted in self-defense.

[¶ 21] During the State's rebuttal, Tammy Obrigewitch testified that in a sub-sequent conversation with Procive on New Year's Eve, she asked Procive why he "did what he did," to which he either responded, "[I]f I say anything, I'll incriminate myself," or "I'm not going to say anything. I'm not going to incriminate myself." Either purported response to Tammy Obrigewitch's question was not an affirmative assertion that he had acted in self-defense. While Procive could certainly refuse to "incriminate" himself to Tammy Obrigewitch, Procive's purported response to her question is proper rebuttal to his own testimony that he acted in self-defense. *See* N.D.R.Ev. 801(d)(2)(i); *cf. Farmers Union Oil Co. v. Harp,* 462 N.W.2d 152, 156 (N.D.1990) (citing N.D.R.Ev. 801(d)(2)(ii) and acknowledging the tacit-admission rule, explaining "a statement may be shown to have been adopted by a party-opponent by showing a failure to deny that statement where denial is called for").

[¶ 22] Regardless of the court's initial reasons for precluding Tammy Obrigewitch from testifying, the district court retained the discretion to admit the evidence once Procive "opened the door" to her rebuttal testimony by testifying in his own defense that he had struck Kurt Obrigewitch in self-defense. *See State v. Hidanovic,* 2008 ND 66, ¶ 35, 747 N.W.2d 463 ("[A] district court is vested with discretion to decide whether a party has opened the door for the admission of further evidence about a subject."); *see also State v. Kruckenberg,* 2008 ND 212, ¶ 29, 758 N.W.2d 427; *State v. Hernandez,* 2005 ND 214, ¶¶ 20–21, 707 N.W.2d 449; *State v. VanNatta,* 506 N.W.2d 63, 70 (N.D.1993); *State v. Purdy,* 491 N.W.2d 402, 409–10 (N.D.1992); *State v. Flynn,* 479 N.W.2d 477, 479–80 (N.D.1992); *State v. Jensen,* 282 N.W.2d 55, 68 (N.D.1979).

[¶ 23] Moreover, we cannot say Procive was "unfairly prejudiced" by the court's decision to allow Tammy Obrigew-

itch to testify in rebuttal. *See Lemer*, 1999 ND 223, ¶ 18, 602 N.W.2d 686 ("Prejudice due to the probative force of evidence is not unfair prejudice."). The record reveals that Procive's trial attorney asked questions during voir dire as to whether any potential jurors knew Tammy Obrigewitch. Although Procive's attorney "renewed" the objection to Tammy Obrigewitch's testimony, Procive did not ask for a continuance once she was permitted to testify in rebuttal. *See* N.D.R.Ev. 403, Explanatory Note; *VanNatta*, 506 N.W.2d at 69–70 ("A continuance is the proper remedy when a party asserts that the introduction of evidence constitutes unfair surprise.").

[¶ 24] After Tammy Obrigewitch had testified in the State's rebuttal, Procive was permitted to cross-examine her. During cross-examination Tammy Obrigewitch agreed that Procive had responded, "I'm not going to say anything. I'm not going to incriminate myself." Procive's trial attorney argued in closing arguments that Procive was simply refusing to talk to Tammy Obrigewitch about the case. Furthermore, in granting Procive's pre-trial motion, the district court plainly stated that although Tammy Obrigewitch was precluded from testifying in the State's case, it was not making a ruling to exclude "anybody as far as rebuttal is concerned."

[¶ 25] Our review of the record reflects that Tammy Obrigewitch's testimony regarding Procive's purported statement to her was properly admitted as non-hearsay evidence under N.D.R.Ev. 801(d)(2), as rebuttal evidence to Procive's testimony asserting that he had acted in self-defense. The district court did not act arbitrarily, capriciously, or unreasonably, nor did the court misinterpret or misapply the law. We therefore conclude the district court did not abuse its discretion in permitting

Tammy Obrigewitch to testify as a rebuttal witness.

### III

[¶ 26] The district court judgment is affirmed.

[¶ 27] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.