2010 ND 248

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**Stevie Regina BUCKLEY, Defendant and Appellant.**

**No. 20100033.**

Supreme Court of North Dakota.

Dec. 21, 2010.

Lloyd C. Suhr (argued) and Pamela A. Nesvig (on brief), Assistant State's Attorneys, Bismarck, ND, for plaintiff and appellee.

Kent M. Morrow (argued), Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Stevie Regina Buckley appealed from a criminal judgment after a jury found her guilty of manslaughter, possession of drug paraphernalia, possession of marijuana, and minor in possession or consumption of alcohol. We conclude the evidence was sufficient to support the jury's guilty verdict for manslaughter, the trial court appropriately refused to instruct the jury on a civil instruction for proximate cause, and the trial court did not abuse its discretion by denying Buckley's motion in limine to exclude certain evidence. We affirm.

I

[¶ 2] Buckley was the eighteen-year-old mother of a six-month-old infant, K.D. On February 2, 2009, Buckley brought K.D. to the emergency room after noticing K.D. was not breathing properly. Buckley told a doctor in the emergency room, Dr. Robert Bathurst, that K.D. had been sick for one day and had diarrhea. Dr. Bathurst testified K.D. was the sickest child he had seen in thirty-eight years and "was a skeleton." K.D.'s physical condition and symptoms indicated to Dr. Bathurst that K.D. was dehydrated, malnourished, and possibly had pneumonia and sepsis. Dr. Bathurst contacted Dr. Patricio Fernandez, a pediatrician in the intensive care unit. Dr. Fernandez initially noted K.D. had diarrhea and a fever, was dehydrated, and had hypovolemic shock. Chemical test results suggested K.D. was moderately to severely malnourished. After treatment for various medical conditions, Dr. Fernandez testified K.D. suffered multiorgan failure secondary to septic shock, dehydration, and hypovolemic shock. K.D. died on February 4, 2009. An autopsy was conducted the day K.D. died, and the medical examiner, Dr. Robert Massello, opined K.D. died from conditions resulting from chronic starvation and dehydration.

[¶ 3] The Burleigh County Sheriff's Department was notified of possible child abuse and neglect of K.D. on February 2, 2009, the day K.D. was admitted to the hospital. A sheriff's deputy interviewed Buckley at the emergency room about her care of K.D. and history of alcohol and drug use. Buckley told the sheriff's deputy and a social worker she smoked marijuana every other day, including the day before bringing K.D. to the emergency room. Buckley was asked why K.D. had a flat spot on the back of her head, and Buckley replied she normally left K.D. lying down on the bed or couch while she did homework, cleaned, or when K.D. was fussy.

[¶ 4] Another sheriff's deputy conducted interviews of Buckley's acquaintances and friends and obtained search warrants for Buckley's residence while K.D. was in

the hospital. He testified he smelled a strong odor of marijuana immediately upon entering Buckley's residence. The sheriff's deputy found tobacco rolling papers, two plastic bottles converted into smoking devices with marijuana residue on them, and three burnt marijuana cigarettes. In Buckley's garbage can, the sheriff's deputy found an empty 1.75–liter bottle of vodka and an empty one-liter bottle of whiskey. In Buckley's kitchen drawers, the sheriff's deputy found a small, empty bottle of rum. Buckley told the sheriff's deputy the items found in her residence were her own. The day after K.D. died, the sheriff's deputy conducted another search of Buckley's apartment for evidence on child care. He found a nearly full box of baby cereal, several jars of apple juice, and seven cans of unopened baby formula. The sheriff's deputy noted there was no crib, high chair, or other furniture for a baby. The sheriff's deputy found no empty or open formula containers anywhere, including the garbage, and he testified it was clear the garbage cans had not been emptied in awhile.

[¶ 5] Buckley was arrested and ultimately charged with manslaughter in the death of K.D., possession of drug paraphernalia, possession of marijuana, and minor in possession or consumption. Buckley moved to exclude evidence of her marijuana use, evidence of her possession of drug paraphernalia, and medical or anecdotal evidence about the flat spot on the back of K.D.'s head. The trial court denied the motion in limine. Buckley proposed civil jury instructions on proximate cause for the manslaughter charge, which the trial court also denied. During a three-day trial, the jury heard testimony from Buckley, several friends and family of Buckley, three physicians who attended K.D., an expert witness who reviewed K.D.'s charts and testified for Buckley, employees from North Dakota and South Dakota's Women, Infants, and Children program ("WIC"), law enforcement officers and investigators, and day care workers who formerly cared for K.D. The jury found Buckley guilty on all counts. On appeal, Buckley argues there was insufficient evidence to sustain the guilty verdict for manslaughter, the trial court erred in denying her motion in limine, and the trial court erred in refusing to instruct the jury on proximate cause.

## II

[¶ 6] Buckley argues the evidence was insufficient to support the guilty verdict on manslaughter because the State failed to prove she acted recklessly with a conscious disregard of risk to K.D., the State's theory of the case improperly rested on omission, and the State did not prove the conditions leading to K.D.'s death occurred within the sixteen days alleged in the criminal information.

[¶ 7] The standard for reviewing a defendant's challenge to the sufficiency of the evidence is well-established:

> Appellate review of the sufficiency of the evidence for a jury verdict is very limited. When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses.... A jury may find a defendant guilty even though evidence exists

which, if believed, could lead to a verdict of not guilty.

*State v. Wanner*, 2010 ND 121, ¶ 9, 784 N.W.2d 143 (quoting *State v. Dahl*, 2009 ND 204, ¶ 6, 776 N.W.2d 37; *State v. Demarais*, 2009 ND 143, ¶ 7, 770 N.W.2d 246).

A

■ [¶ 8] Buckley argues there was insufficient evidence she recklessly caused K.D.'s death. Buckley contends she was not aware of K.D.'s condition, did not consciously disregard K.D.'s condition, and did not intentionally withhold nutrition from K.D. The State argues the evidence of Buckley's lifestyle and availability of resources to care for K.D. "strongly supported a finding that Buckley knew how to meet and could meet K.D.'s nutritional needs, but disregarded her duties as a parent in lieu of a more carefree lifestyle."

■ [¶ 9] "A person is guilty of manslaughter ... if he recklessly causes the death of another human being." N.D.C.C. § 12.1–16–02. A person acts recklessly "if he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct.... " N.D.C.C. § 12.1–02–02(1)(c). The definition of "recklessly" suggests "a high degree of risk of which the actor is actually aware." *State v. Trieb*, 315 N.W.2d 649, 657 (N.D.1982) (quoting ALI Model Penal Code and Commentaries, Part II, § 210.3(1)(a), Comment on Manslaughter at 49 (1980)). States of mind including "knowingly," "intentionally," or "negligently," are not included in the definition of the crime of manslaughter. *State v. Granrud*, 301 N.W.2d 398, 403 (N.D.1981). The term "conscious" in the definition of manslaughter does not imply "knowingly" or "intentionally." *Id.*

[¶ 10] The State's evidence demonstrated Buckley knew the level of care K.D. required and was aware K.D. would be at risk if she did not receive that level of care. The State presented evidence on the education and assistance Buckley received from the supplemental food program WIC. The jury heard from a registered nurse, a nutrition educator, a nutritionist, and the WIC coordinator from United Tribes Technical College, all of whom provided Buckley with instruction and literature on feeding and caring for an infant. Buckley received vouchers from WIC to buy formula and baby food and was informed K.D. might require more food than WIC provided in a month. Buckley was aware K.D. could be at risk if she lost weight. A WIC employee, a registered nurse, testified she weighed K.D. at the age of three weeks, and K.D. had lost a significant amount of weight from her birth weight. The employee referred K.D. to a doctor. Buckley did not take K.D. to a doctor after the first WIC visit, but another WIC employee a month later weighed K.D. and found she was at a normal weight. Buckley admitted on cross-examination she knew K.D.'s weight was a concern, because of K.D.'s first visit to WIC when she had lost a significant amount of weight. In addition to testimony on the assistance Buckley received from WIC, the jury heard testimony about the resources available for Buckley as a parent enrolled as a student at United Tribes Technical College. The evidence allowed the jury to find Buckley was aware of the risks of K.D. not receiving adequate care, and resources were made available to Buckley to provide the adequate level of care.

[¶ 11] The jury heard evidence Buckley consciously disregarded the risk of K.D. not receiving an adequate level of care. Buckley told investigators she laid K.D. down often, which resulted in K.D. developing a flat spot on the back of her head. Buckley admitted she drank alcohol once a week and smoked marijuana every other day, sometimes in K.D.'s presence. Buckley's neighbor, a campus security guard at the residence hall where Buckley lived, and two acquaintances, testified about parties at Buckley's residence, a one-room dormitory room. Buckley's neighbor testified there were loud parties in Buckley's room four or five nights a week. Around the end of January, Buckley's neighbor called campus security because of the noise from Buckley's room. The campus security guard who responded testified he smelled marijuana and saw alcohol bottles when he entered Buckley's room. A friend of Buckley's testified he attended parties at Buckley's room where there was alcohol, and Buckley drank alcohol. Buckley's friend testified K.D. was lying on the bunk bed in the room while Buckley smoked marijuana in the bathroom.

[¶ 12] The State's theory of the case, that Buckley knew and disregarded the risk of K.D. not receiving adequate care, was proper. However, Buckley argues the State had to prove she was aware of K.D.'s actual physical condition and she consciously disregarded that condition. Contrary to Buckley's argument, there was evidence for the jury to rely on if the State had to prove she also knew of the risk of K.D.'s actual physical condition. The jury heard extensive medical evidence on K.D.'s condition upon her arrival at the emergency room and on the causes of K.D.'s death. Dr. Bathurst testified K.D. weighed several pounds less than she should have, and looked like a starving child with pale skin, a bloated belly, and skeletonized features. Dr. Bathurst concluded K.D. had been sick for longer than a day. Dr. Fernandez testified K.D. was gray in color, limp, and had a rapid heart beat and poor circulation. An acquaintance testified he saw K.D. the day before K.D. was taken to the emergency room, and K.D. looked pale, her eyes were big and sunken in, and he saw more cheekbones than he had ever seen on a child. Buckley's family and friends, however, testified K.D. looked healthy to them and Buckley was a good mother. Buckley testified she never saw anything wrong. The jury's role was to determine the weight and credibility of the evidence, and there was sufficient evidence for the jury to find Buckley was aware of K.D.'s actual physical condition and disregarded it.

[¶ 13] Buckley also argues her conduct did not contribute to K.D.'s death, because some of the medical evidence suggested infection led to K.D.'s death and dehydration could have resulted from diarrhea. Dr. Bathurst testified K.D.'s weight, physical appearance, and symptoms all suggested chronic malnutrition and dehydration. Dr. Fernandez testified K.D. could not have suffered the level of dehydration and malnutrition she experienced by having diarrhea just twice, as Buckley stated. Dr. Fernandez provided detailed medical testimony of how chemical test results and symptoms were evident of, and caused by, malnutrition and dehydration. Dr. Fernandez stated K.D. died of multi-organ failure, caused by septic shock, possibly caused by an infection to which K.D. was highly susceptible because of dehydration and malnutrition. Dr. Massello testified K.D.'s organs and glands indicated chronic starvation and malnutrition, which he testified with a reasonable degree of medical certainty were the causes of K.D.'s death. Dr. Massello testified sepsis was a factor in K.D.'s death and detailed the link between

malnutrition, sepsis, and other factors contributing to K.D.'s death. Buckley's expert, though he believed K.D. suffered an antecedent illness, agreed K.D. did not receive adequate nutrition for at least a few days. There was sufficient evidence for the jury to rely on in finding Buckley's conduct and the level of care she provided caused K.D.'s death.

[¶ 14] The evidence at Buckley's trial was sufficient to establish she was aware of the risk of K.D. not receiving adequate care, and through her conduct, consciously disregarded the risk. The evidence supported the jury finding Buckley's conduct led to K.D.'s death. There was sufficient evidence to support the guilty verdict for manslaughter.

B

[¶ 15] Buckley argues the State did not prove she took any action to cause K.D.'s death, so the State's theory of the case relied improperly on a "theory of omission." Buckley contends the State did not prove she was guilty by omission.

[¶ 16] "In some very limited instances, a person can be held criminally liable *solely* for failing to render aid to another." *State v. Streeper*, 2007 ND 25, ¶ 37, 727 N.W.2d 759 (emphasis in original). A person omitting to perform an act may be guilty of an offense if the person had a legal duty to perform the act. N.D.C.C. § 12.1–02–01(2). A parent has an affirmative duty to provide sufficient food to meet a child's needs. N.D.C.C. § 14–07–15 (Abandonment or nonsupport of child—Penalty); *see also* N.D.C.C. § 14–09–08 (Mutual duty to support children).

[¶ 17] We examined an argument similar to Buckley's in *Streeper*. The defendant, Streeper, was charged with manslaughter in the death of a sixteen-year-old girl, and the State alleged he injected her with drugs and failed to render aid as she overdosed and died. *Streeper*, at ¶ 33. At trial, Streeper objected to the State's theory of the case and closing arguments because, he argued, the State was improperly implying he had a legal duty to render aid to the girl, that he failed to do so, and as a result the girl died. *Id.* at ¶¶ 33, 35. We noted the State's theory of the case was not based solely on the failure to render aid. *Id.* at ¶ 38. Instead, the State alleged Streeper's failure to render aid was a continuation of the criminal conduct which contributed to the girl's death. *Id.* The jury was properly instructed on the definition of reckless conduct, and the jury was allowed to find Streeper committed manslaughter. *Id.* at ¶ 40.

[¶ 18] The State's theory of the case was that Buckley's conduct of drinking, smoking marijuana, and failing to ensure K.D. received adequate nutrition, was reckless conduct. The State's case did not rest solely on a failure to act.

C

[¶ 19] Buckley argues the State failed to prove K.D. suffered undernourishment resulting in death within the sixteen days alleged in the criminal information, and the time period was an essential element of the crime charged.

[¶ 20] A criminal information must be specific enough to inform the defendant of the charge against her and to enable her to prepare for trial. *State v. Hatch*, 346 N.W.2d 268, 276 (N.D.1984). We previously stated the time period alleged in a criminal information is not always an essential element of an offense:

[U]nless time is an essential element of an offense, it is not required in a criminal prosecution that the crime be proved to have been committed on the precise date or time period alleged in the com-

plaint or information. It is sufficient that the State prove the commission of the crime charged at any time prior to the filing of the complaint and within the period fixed by the applicable limitations statute.

*Id.*; *see also State v. Vance,* 537 N.W.2d 545, 549 (N.D.1995) (the precise date and time of gross sexual imposition are not elements of the crime and are unnecessary to sustain a conviction). If time is not an element of the crime, a variance in proof from the time period alleged in the information is not fatal, as long as the statute of limitations has not been violated and the conduct occurred prior to indictment. *See State v. Hersch,* 445 N.W.2d 626, 634 (N.D. 1989); *see also Hatch,* 346 N.W.2d at 276 n. 4.

[¶ 21] Two expert witnesses provided testimony on the degree of malnourishment K.D. suffered and provided calculations on the length of time she may have received a lack of nutrition. The State's witness, Dr. Massello, performed K.D.'s autopsy. Dr. Massello testified, based on his initial calculations, K.D. had either no nourishment for sixteen straight days, or K.D. received inadequate nutrition for a longer period of time. Dr. Massello testified K.D. lacked nutrition for the equivalent of sixteen days, whether it occurred immediately preceding K.D.'s death or spread over her lifetime of six months. Buckley's expert witness, Dr. James Stone, reviewed K.D.'s medical records and other evidence gathered during the criminal investigation. Dr. Stone used calculations which resulted in a different time period of undernourishment. Dr. Stone testified, depending on K.D.'s actual weight before she was admitted to the hospital, K.D. either suffered caloric deprivation for eleven days or no days. Dr. Stone could not conclude with any degree of certainty that K.D. suffered from starvation. After Dr. Stone's testimony, the State called Dr. Massello again, this time as a rebuttal witness. Dr. Massello testified why he would not have used Dr. Stone's method of calculation. Dr. Massello presented alternative methods of calculating malnourishment ranges and testified he initially thought sixteen days was an appropriate time period because he calculated the malnourishment period lasted anywhere from seven to twenty-four days. Dr. Massello subsequently used different calculation methods, which resulted in an estimated malnourishment time period of four and a half to thirty-seven days.

[¶ 22] Elements of an offense include: "a. The forbidden conduct; b. The attendant circumstances specified in the definition and grading of the offense; c. The required culpability; d. Any required result; and e. The nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue." N.D.C.C. § 12.1–01–03(1). The definition of manslaughter does not include an element of time. *See* N.D.C.C. § 12.1–16–02. That testimony and evidence established K.D. may have suffered undernourishment outside of the sixteen days preceding her death does not constitute reversible error.

### III

[¶ 23] Buckley argues the trial court erred in refusing to instruct the jury on the definition of proximate cause, since the State was required to prove Buckley caused K.D.'s death.

[¶ 24] This Court reviews jury instructions

as a whole to determine whether they fairly and adequately advise the jury of the applicable law. The trial court is not required to instruct the jury in the exact language sought by a party if the instructions are not misleading or con-

fusing, and if they fairly advise the jury of the law on the essential issues of the case. This Court reviews the evidence in a light most favorable to the defendant to determine whether there is sufficient evidence to support a jury instruction. An error in a jury instruction is grounds for reversal when the instruction, read as a whole, is erroneous, relates to a subject central to the case, and affects the substantial rights of the defendant.

*State v. Bauer,* 2010 ND 109, ¶ 10, 783 N.W.2d 21 (citations omitted). A trial court may properly refuse to submit an instruction to the jury which is inapplicable or irrelevant. *State v. Zajac,* 2009 ND 119, ¶ 12, 767 N.W.2d 825 (citing *City of Mandan v. Willman,* 439 N.W.2d 92, 94 (N.D.1989)).

[¶ 25] The jury was informed the State had the burden to prove "1. On or about the 21st day of January, 2009 through the 4th day of February, 2009; 2. In Burleigh County, North Dakota; 3. The defendant, Stevie Buckley; 4. Recklessly caused the death of another human being, namely K.D. ..." The jury was also informed of the statutory requirement for finding Buckley acted recklessly. Buckley requested the trial court introduce a civil instruction on proximate cause: "A proximate cause is a cause which, in natural and continuous sequence, produces the injury, and without which, the injury would not have occurred." The trial court rejected the civil instruction, believing it would be confusing for the jury in a criminal case. The trial court noted the given instructions were adequate without the civil proximate cause instruction.

[¶ 26] The jury was adequately informed on the law and the parties' burdens of proof, the instructions were not erroneous, and the trial court did not err in refusing to submit the civil proximate cause instruction to the jury.

## IV

[¶ 27] Buckley argues the trial court erred in denying her motion in limine to exclude evidence of her use of marijuana, possession of drug paraphernalia, and medical or anecdotal evidence about the flat spot on the back of K.D.'s head. Buckley argues the evidence was irrelevant to the manslaughter charge and unfairly prejudicial. Buckley argues the evidence of marijuana possession and use constitutes improper evidence of other wrongs or acts. Buckley did not move to sever the counts against her, nor did she request the trial court give the jury instructions to limit evidence to certain charges.

[¶ 28] This Court reviews the trial court's decision on a motion in limine for abuse of discretion. *M.M. v. Fargo Pub. Sch. Dist. No. 1,* 2010 ND 102, ¶ 21, 783 N.W.2d 806 (citing *State v. Buchholz,* 2006 ND 227, ¶ 7, 723 N.W.2d 534). "A court abuses its discretion 'by acting in an arbitrary, unreasonable, or unconscionable manner.'" *Id.* (quoting *State v. Bjerklie,* 2006 ND 173, ¶ 4, 719 N.W.2d 359).

## A

[¶ 29] Buckley argues the evidence of marijuana use, possession of drug paraphernalia, and evidence on the flat spot on the back of K.D.'s head had no probative value and was irrelevant to whether she recklessly caused K.D.'s death. Buckley argues because the evidence was irrelevant, the trial court erred in not excluding the evidence pursuant to her motion in limine.

[¶ 30] "Evidence which is not relevant is not admissible." N.D.R.Ev. 402. "The test to determine whether evi-

dence is relevant or irrelevant is whether the evidence would reasonably and actually tend to prove or disprove any matter of fact in issue." *State v. Thompson,* 2010 ND 10, ¶ 10, 777 N.W.2d 617 (quoting *State v. Osier,* 1999 ND 28, ¶ 19, 590 N.W.2d 205; *State v. Buckley,* 325 N.W.2d 169, 172 (N.D.1982)); *see also* N.D.R.Ev. 401. The evidence of marijuana use and possession of paraphernalia was necessary to the possession of marijuana and possession of drug paraphernalia charges against Buckley. Its exclusion for purposes of those charges would have been improper. The evidence on Buckley's marijuana use and possession of paraphernalia was also relevant to the manslaughter charge because it tended to prove the level of care Buckley provided. The evidence of the flat spot on the back of K.D.'s head was relevant to Buckley's care of K.D. The evidence informed the jury on whether Buckley was reckless, and if Buckley was reckless, whether her reckless conduct led to K.D.'s death. The trial court did not abuse its discretion by finding the evidence was relevant.

### B

[¶ 31] Buckley argues the evidence of use and ingestion of controlled substances, possession of drug paraphernalia, and evidence on the flat spot of K.D.'s head should have been excluded because the prejudice to Buckley from the evidence outweighed any relevance.

[¶ 32] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." N.D.R.Ev. 403. " 'The power to exclude evidence under N.D.R.Ev. 403 should be sparingly exercised,' and '[p]rejudice due to the probative force of evidence is not unfair prejudice.' " *State v. Procive,* 2009 ND 151, ¶ 9, 771 N.W.2d 259 (quoting *Lemer v. Campbell,* 1999 ND 223, ¶ 18, 602

N.W.2d 686). The evidence Buckley sought to exclude consisted of witness testimony about parties at Buckley's residence, testimony about and pictures of law enforcement's search of Buckley's residence, and testimony about the flat spot on the back of K.D.'s head. The marijuana evidence was necessary for the marijuana charges against Buckley, and the marijuana evidence and the evidence of the flat spot on the back of K.D.'s head were relevant to the level of care K.D. received. The evidence was no more prejudicial than necessary for the State to prove its case. The trial court properly used its discretion to find the probative value outweighed prejudice to Buckley.

### C

[¶ 33] Buckley argues the evidence on her marijuana usage outside of the time period alleged in the criminal information constituted improper evidence of other crimes, wrongs, or acts.

[¶ 34] "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, it may be admissible for other purposes. . . ." N.D.R.Ev. 404(b). A trial court must engage in a three-step analysis to determine whether evidence of other crimes, wrongs, or acts is admissible:

> 1) the court must look to the purpose for which the evidence is introduced; 2) the evidence of the prior act or acts must be substantially reliable or clear and convincing; and 3) in criminal cases, there must be proof of the crime charged which permits the trier of fact to establish the defendant's guilt or innocence independently on the evidence presented, without consideration of the evidence of the prior acts.

*State v. Paul,* 2009 ND 120, ¶ 18, 769 N.W.2d 416 (quoting *State v. Alvarado,* 2008 ND 203, ¶ 14, 757 N.W.2d 570; *State*

*v. Gaede*, 2007 ND 125, ¶ 26, 736 N.W.2d 418). The probative value of the evidence must outweigh any prejudicial effect. *Id.*

[¶ 35] Prior acts that are evidence of activity in furtherance of the same criminal activity a defendant is charged with may avoid exclusion under N.D.R.Ev. 404(b) because the prior acts are not independent of the crime charged. *Paul*, 2009 ND 120, ¶¶ 20–25, 769 N.W.2d 416 (citing *Alvarado*, 2008 ND 203, ¶ 12, 757 N.W.2d 570; *State v. Christensen*, 1997 ND 57, ¶ 8, 561 N.W.2d 631). The evidence of marijuana use prior to the time period alleged in the information was a continuation of Buckley's conduct in caring for K.D. The evidence Buckley sought to exclude was not of independent acts used to prove her character, but instead the evidence was used to prove the level of care K.D. received. The State had a proper purpose to introduce the evidence.

[¶ 36] The trial court must also ensure the evidence is substantially reliable. We previously recognized a defendant's admission of a prior act satisfies the requirement that evidence of prior acts be substantial, clear, and convincing. *See State v. Ohnstad*, 359 N.W.2d 827, 837 (N.D. 1984) (citing *State v. Stevens*, 238 N.W.2d 251, 257 (N.D.1975)). Buckley admitted to investigators she smoked marijuana every other day, including the day before she brought K.D. to the emergency room. Buckley acknowledged her marijuana habits at trial. The evidence of marijuana usage prior to the time period alleged in the complaint was substantial, clear, and convincing.

[¶ 37] Finally, there must be sufficient other evidence for the jury to rely upon, because evidence of prior acts should not be the only evidence available to determine the defendant's guilt. In *Ohnstad*, the defendant was charged for manslaughter in the death of her infant, and we held the trial court did not abuse its discretion in allowing evidence the defendant bit her infant on the cheek two days prior to the infant's death. 359 N.W.2d at 838. Substantial other evidence existed on the defendant's care of the infant, and the injuries leading to the infant's death, for the jury to find the existence of the elements of manslaughter. *Id.* at 837–38. We also recognized "[t]he admissibility of evidence of other acts to establish intent and *absence of mistake or accident* is well established in child abuse cases." *Id.* at 838 (emphasis in original). The trial court did not err in refusing to exclude marijuana evidence as improper evidence of prior crimes, acts, or wrongs.

[¶ 38] The evidence of Buckley's prior marijuana usage was part of the conduct leading to the charges against Buckley, rather than independent evidence to prove her character and action in conformity therewith. The evidence was substantially reliable, and there was sufficient other evidence on the level of care K.D. received and the cause of her death for the jury to find Buckley guilty or not guilty of manslaughter. The trial court did not abuse its discretion in denying Buckley's motion in limine.

## V

[¶ 39] We conclude there was sufficient evidence to support the guilty verdict on manslaughter. We conclude the trial court did not err in instructing the jury and did not abuse its discretion in denying Buckley's motion in limine. Therefore, we affirm the criminal judgment and convictions.

[¶ 40] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.